This is a pretrial appeal by the State from an order of the circuit court granting a motion to suppress filed by James Douglas Wilson, who had been indicted for second degree arson. The order of the circuit court is reversed because the defendant's motion to suppress was not due to be granted.
At 2:30 on the morning of May 3, 1985, Investigator Ray Mann of the Clanton Police Department arrived at the residence of Faye Ward to investigate a fire. Mann testified that the house trailer was "fully *Page 1062 
engulfed" in flames and that Mrs. Ward told him that earlier that night she had had an argument with the defendant, her estranged husband, and that she suspected him of setting the fire. One of the firemen on the scene indicated that arson was involved and "felt like they smelled — the smell of gas." Mann placed a "BOLO" for the defendant.
Early on the morning of May 3rd, Thorsby Police Officer Bruce Matson received a telephone call from the Clanton Police Department requesting him to check on a vehicle possibly blocking the highway and to be on the lookout for a particularly-described car driven by the defendant. Officer Matson was told that if he found the subject to notify the Clanton Police Department "and to hold the subject for them."
Sometime during the predawn hours of May 3, 1985, Officer Matson discovered the defendant sitting in his car parked "in the middle of U.S. 31." The car was sitting in the right-hand lane of a four-lane highway. The defendant was seated in the driver's seat eating chicken. There were some chicken bones beside the car. The engine was not running.
Matson asked the defendant if he had a problem and the defendant responded that the engine of his car had quit. Matson testified, "He told me that he had driven the car to that point where it had stopped on him." Matson smelled the odor of a "moderate amount of alcohol" coming from the defendant, whose speech was "slurred somewhat" and whose eyes were bloodshot. Officer Matson testified that the defendant was "moderately intoxicated." The defendant was arrested for driving under the influence.
Officer Matson contacted Clanton Police Officer Frank Sazera. When Officer Sazera arrived, Officer Matson asked him to transport the defendant to the Clanton Police Department. Thorsby does not have a jail, so the city prisoners are jailed in Clanton, in the Chilton County jail.
The defendant was transported to the jail and was informed that he was "under investigation for arson." At the officer's request, the defendant "voluntarily" gave the police some items of clothing.
Deputy State Fire Marshal James Munger testified that, 45 minutes after the defendant was arrested for DUI, he voluntarily gave him his clothes. He testified that he did not know how intoxicated the defendant was, but that the defendant "did not appear to be able to be unresponsive." Munger stated, "I would say he was coherent and he was in a position to understand what was being asked of him." Munger said he "thought" the defendant understood the things he was told. Munger testified that the defendant did not appear to be intoxicated to the point that he could not understand, and, in his opinion, voluntarily gave him his clothes.
The defendant did not testify at the hearing on the motion to suppress.
The trial court partially granted the defendant's motion to suppress and issued the following order:
 "This cause coming before the Court on Defendant's Motion to Suppress and upon the evidence, testimony, and argument of counsel for both the Defendant and the State of Alabama, presented at a hearing thereon, this Court finds the following facts and [makes these] conclusions of law;
 "1. The Defendant was arrested without an arrest warrant.
 "2. There was no probable cause to arrest the Defendant for the offense of driving under the influence of alcohol in violation of § 32-5A-191, Code of Alabama, 1975, in that, by the officer's own testimony, the vehicle in which the Defendant was sitting was inoperable. Further, that any statement made by the Defendant to the officer was made in the absence of any Miranda warnings.
 "3. That the Defendant was, according to the officer who unlawfully charged him with D.U.I., intoxicated at the time of arrest and was therefore still intoxicated forty-five minutes later when he relinquished possession of his clothing. Therefore, his consent was not knowing and voluntary. *Page 1063 
 "Therefore, it is ORDERED, ADJUDGED, and DECREED, that the following items are due to be and are hereby, suppressed;
 "1. All items taken from the person of Defendant by Officer Frank Sazera at the time of Defendant's unlawful arrest for driving under the influence of alcohol, in violation of § 32-5A-191, Code of Alabama, 1975.
 "2. All items of clothing obtained from the person of Defendant pursuant to his involuntary consent, due to intoxication.
 "3. One two-gallon plastic container and the content thereof if the evidence shows this item was [sic] seized at the time of Defendant's unlawful arrest for driving under the influence of alcohol, in violation of § 32-5A-191, Code of Alabama, 1975.
 "It is further ORDERED, ADJUDGED and DECREED, that the statement given by Defendant subsequent to [five and one-half hours after] his arrest was voluntarily and knowingly made and is therefore not due to be suppressed."
In Cagle v. City of Gadsden, 495 So.2d 1144, 1147 (Ala. 1986), our Supreme Court held that, in a prosecution for DUI, in determining whether a motorist, who was not actually seen driving the vehicle, had "actual physical control" over the vehicle, a totality-of-the-circumstances test is to be employed. Under Key v. Town of Kinsey, 424 So.2d 701
(Ala.Cr.App. 1982), the test for determining actual physical control included a requirement that the vehicle be operable to some extent. In Cagle, this approach was found "too restrictive" and was specifically "abandoned." Cagle, 495 So.2d at 1147.
When a driver is found to be intoxicated, it is a question of fact, to be determined from the circumstances of each case, whether the driver's drunken condition existed at the time of the accident or arose in the interim between the accident and the investigation. "Thus, the requirement that the State show that the defendant did not have access to, or consume, alcoholic beverages after the accident is now removed."Bickerstaff v. State, 516 So.2d 800, 801 (Ala. 1987).
When discovered, the defendant's car was parked in a public place. Consequently, Officer Matson's conduct in approaching the vehicle and asking the defendant a limited number of questions did not constitute a seizure and did not require theMiranda warning. Betterton v. State, 527 So.2d 743
(Ala.Cr.App. 1986), affirmed, Ex parte Betterton, 527 So.2d 747
(Ala. 1988). See also Berkemer v. McCarty, 468 U.S. 420,104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation for purposes of the Miranda
rule).
It appears that, in granting the motion to suppress, the trial court followed the now abandoned test of Key v. Town ofKinsey, supra, in determining whether the defendant was properly arrested for DUI. Initially, we note that the proper question is not whether the evidence supports the defendant's conviction for DUI, but whether or not there was probable cause to arrest for DUI. There is a "difference between what is required to prove guilt in a criminal case and what is required to show probable cause to arrest or search." Brinegar v. UnitedStates, 338 U.S. 160, 173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879
(1949). Probable cause " 'means less than evidence which would justify condemnation' or conviction." Brinegar,338 U.S. at 175, 69 S.Ct. at 1310.
Based upon the facts of this case and applying the legal principles contained in the above cited authorities, we hold that the defendant was properly arrested for DUI and that any statement made by the defendant to the police before his arrest for DUI constitutes admissible evidence.
Additionally, we find that the prosecution presented satisfactory proof of the defendant's consent to search his clothing and his vehicle. The only evidence contradicting the testimony that the defendant understood what he was doing and that his consent was voluntary was the fact of his recent arrest for DUI. That fact alone was *Page 1064 
not sufficient to rebut the testimony of voluntariness under the facts of this case.
 "It is also possible that a person may be determined to have been incapable of giving consent because he was under the influence of drugs or intoxicants at the time the police sought his cooperation. However, it is important to note that what might amount to being under the influence for other purposes is not necessarily sufficient to compel the conclusion that the individual was without capacity to consent. This point emerges clearly in United States v. Leland
[376 F. Supp. 1193 (D.Del. 1975)]:
 "The question * * * is, was Leland so intoxicated that his consent to the search was not the product of a rational intellect and a free will? The Court finds that Leland was not intoxicated to that extent. Concededly he was intoxicated to the extent that he was unfit to drive, was unsteady on his feet and difficult to rouse. However, he still possessed sufficient intellect to recount a story plausible enough to the officers that they were content to leave him even after the NCIC report had reported the license plates as lost or stolen. Even after the officers returned for the third time, Whaley testified that Leland's explanations were still somewhat plausible despite the fact that by that time they had also received a report that the vehicle itself had been reported as stolen. Leland was rational enough to understand the charge against him, to offer a plausible explanation, and to locate physical evidence in an attempt to back up his explanation. Therefore the Court concludes that Leland was rational at the time of the search of his car so that his consent was the produce of a rational intellect and a free will.
 "Utilizing similar analysis, other courts have held that the consenting party's intoxicated or drugged condition was not so serious as to deprive him of the capacity to give a valid consent." W. LaFave, 3 Search and Seizure § 8.2(e) at 199-200 (2d ed. 1987).
For these reasons, this Court finds that the trial court improperly granted the defendant's motion to suppress. The order of the circuit court is reversed to the extent that it suppressed the evidence, and this cause is remanded so that the prosecution of the defendant may continue.
REVERSED AND REMANDED.
All Judges concur.