Keith Bernard Carr, a juvenile, was certified to stand trial as an adult for the offense of robbery in the first degree.[1] The trial court granted the State's motion to join for trial Carr and his two adult codefendants. The consolidated cases were tried before a jury which convicted Carr of third degree robbery and acquitted the codefendants. Carr was subsequently sentenced to imprisonment for ten years, fined $1,000, and ordered to pay a victim's compensation assessment of $1,000 and court costs. Three issues are raised in this appeal from his conviction.
Around 8:40 p.m. on November 20, 1986, a black male entered the Raceway gas station and convenience store in Auburn, Alabama, and robbed the attendant, David Ehl, of $154. The robber ran out of the store and entered a waiting car from the passenger-side door. The car, which was occupied by at least one other person, then drove away. Ehl wrote down the tag number of the car and gave this information to the Auburn police. Ehl had seen the robber and another black male in the store shortly before the robbery. *Page 822 
Approximately ten minutes after the robbery, Auburn police officers stopped a car bearing the tag reported by Ehl. The car was occupied by three black males, with Carr seated in the rear. A $20 bill was found on the rear floor board of the car. The three black males were transported to the Raceway where Ehl identified Carr as the robber and one of the other occupants as the man who had been in the store with Carr before the robbery.
Carr and his codefendants were then taken to the Auburn Police Station. Some five hours later, Carr gave a statement in which he confessed to the commission of the robbery. Shortly thereafter he was delivered to the Lee County Youth Development Center. The intake officer instructed Carr to remove all his clothes and put on institutional garb. While doing so, Carr retrieved $134 in currency from his crotch area and handed it to an Auburn police officer who was present.
 I
Carr asserts that his confession should have been suppressed due to his "minority, immaturity, intoxication, lack of education, experience, background and intelligence."
It is well settled in this state that an extrajudicial statement is presumed to be involuntary and is inadmissible at trial unless the State presents sufficient evidence to show that the statement was in fact voluntary and that the properMiranda warnings were given. Ex parte Johnson, 522 So.2d 234
(Ala. 1988); Crowe v. State, 485 So.2d 351 (Ala.Cr.App. 1984), reversed on other grounds, 485 So.2d 373 (Ala. 1985). When the State seeks the admission of the statement of a juvenile, the State must show that the juvenile was advised of his rights under Rule 11(A), A.R.Juv.P., rather than the standard Miranda
rights of which adults are advised. See Ex parte Whisenant,466 So.2d 1006 (Ala. 1985); Scott v. State, 501 So.2d 1273
(Ala.Cr.App. 1986). Rule 11(A) contains the basic Miranda
warnings, plus the additional information that the juvenile has the "right to communicate with [his counsel, parent, or guardian if they are not present], and that, if necessary, reasonable means will be provided for him to do so." Rule 11(A)(4), A.R.Juv.P. See Ex parte Whisenant, supra.
Due process requires the trial court to hear evidence outside the presence of the jury in order to determine whether the statement or confession was, in fact, voluntarily made.Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908
(1964); Miller v. Dugger, 838 F.2d 1530 (11th Cir.), cert. denied ___ U.S. ___, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). This determination is to be made based upon a consideration of the "totality of the circumstances." Blackburn v. Alabama,361 U.S. 199, 206, 80 S.Ct. 274, 280, 4 L.Ed.2d 242, 248 (1960);Myers v. State, 431 So.2d 1342, 1345 (Ala.Cr.App. 1982), writ quashed, 431 So.2d 1346 (Ala. 1983).
The United States Supreme Court has specifically held that the "totality of the circumstances" test is applicable when determining the admissibility of a juvenile's confession:
 "This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits — indeed it mandates — inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."
Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572,61 L.Ed.2d 197 (1979) (quoted in Chambers v. State, 497 So.2d 607,609-10 (Ala.Cr.App. 1986); Jackson v. State, 516 So.2d 726, 745
(Ala.Cr.App. 1985)). See also Scott v. State, 501 So.2d at 1274;Whisenant v. State, 466 So.2d 995, 1000 (Ala.Cr.App. 1984), reversed on other grounds, 466 So.2d 1006 (Ala. 1985). *Page 823 
At the suppression hearing held outside the presence of the jury, Auburn Police Detective Sergeant Chris Murry testified that shortly after Carr's arrival at the Auburn Police Station he advised Carr of his rights as a juvenile from a form used by Auburn police personnel for that purpose. Carr stated that he understood these rights and executed a waiver of these rights at 9:18 p.m. Sometime during this process, Murry attempted to contact Carr's parents by telephone, but was unable to reach them. He did this because Carr was a juvenile, not because Carr asked him to do so. Murry did not question Carr regarding the robbery at the time this waiver was signed because Carr became disorderly and Murry's supervisor instructed Murry to remove Carr from the detective division. Murry took Carr to the booking room and left him there. Murry stated that, in his opinion, Carr was intoxicated at this time.
It does not appear from the record that Carr had any further contact with police officers until some three hours later. Detective William Ramsey stated that he was in the booking area around 10:30 p.m. and he observed Carr using the telephone, but he did not have any personal contact with Carr at that time. Around midnight, Detective Corporal Andy Thee went to the booking room to take Carr back to the detective division for questioning. Carr asked to use the telephone to call his mother. Thee dialed the number Carr gave him, but did not listen to the ensuing conversation. After Carr ended his call, Thee took him to an interview room in the detective division where Detective Ramsey was present.
Prior to any questioning concerning the robbery, Thee advised Carr of his rights using a form identical to the form Murry had used earlier. Carr read over this form, stated that he understood his rights and that he was willing to make a statement, and executed the waiver portion at 12:20 a.m. Thee left the interview room approximately fifteen minutes after Carr executed the waiver and did not return. At approximately 1:00 a.m., Murry joined Carr and Ramsey in the interview room, but he never informed Ramsey that he had earlier advised Carr of his rights and that Carr had executed a waiver.
Carr was questioned for approximately two hours. From 12:20 until 1:45 a.m., he essentially denied any involvement in the robbery, maintaining that the robber was his cousin. Beginning around 1:45 a.m., Carr gave an oral statement in which he admitted committing the robbery. Ramsey reduced this statement to writing, Carr read over it, acknowledged that it was correct, and signed it at 2:15 a.m. Murry transported Carr to the Lee County Youth Development Center around 3:00 a.m.
Both Thee and Ramsey testified that no reward or hope of reward was offered to Carr, and that he was not threatened in order to induce him to give a statement. Ramsey, who was present during the entire interrogation, stated that Carr never asked to stop talking or asked for his parents or a lawyer. Ramsey did testify that Carr said "he thought that [his parents] were on their way down. I let him know that as soon as they arrived that I would let him know." It is undisputed that Carr's parents did not appear at the police station that night. Murry stated that Carr did not, at any time, tell him (Murry) that he wanted to talk to his mother.
Thee testified that Carr was intoxicated at 12:20 a.m., but was not in "such a condition that he was unable to understand the questions [Thee was] asking of him." In Ramsey's opinion, Carr was "somewhat intoxicated" at this time, although he did not give Carr any tests for intoxication. Ramsey did not "have any difficulty in understanding [Carr, nor] did Carr appear to have any difficulty in understanding [Ramsey]." Carr did not appear "dizzy, disoriented, fall down, throw up or anything like that." During Murry's testimony at the suppression hearing, the following exchange occurred:
 "THE COURT: When you started taking that statement, or when Mr. Ramsey started taking that statement from [Carr], around one, or whatever time it was, had he sobered up from the intoxication of earlier? *Page 824 
 "[MURRY]: Yes, sir, he seemed to be, to know a little bit about —
"THE COURT: Sir?
 "[MURRY]: He seemed to be able to comprehend a little bit more about what was going on.
"THE COURT: Was he sober at that time?
"[MURRY]: Oh, yes, sir.
"THE COURT: Do what?
"[MURRY]: He appeared to be."
Carr testified at the suppression hearing that he was drunk when he was arrested around 9:00 p.m., having consumed four or five beers and a quart of wine during the preceding afternoon and early evening. He stated that he was taken to the police station where he was placed "in a little room." Carr testified that, sometime after 11:00 p.m., he telephoned his parents and spoke with his mother.[2] He was not given anything to eat, but was given one soft drink at some point. Carr also stated that he told the officers "[he] wanted [his] mamma to come down." On cross-examination by the district attorney, Carr maintained that he did not remember being advised of his rights or telling the police about the robbery. However, he acknowledged his signatures on the waiver and statement and also acknowledged that the statement accurately described the events of the evening. In response to questions from counsel for a codefendant, Carr admitted that he had been drunk before this occasion and that he did not always remember things that happened when he had been drinking.
Carr's mother also testified at the suppression hearing. She stated that she did not learn that Carr had been arrested until around 12:15 a.m., when her daughter called to inform her of this fact. The next morning around 10:00 a.m. she "went down to the jail where he was, that's when [she] saw him afterwards."
"Where the evidence of voluntariness is conflicting, and even where there is credible testimony to the contrary, the trial judge's finding of voluntariness must be upheld unless palpably contrary to the weight of the evidence. Ash v. State,424 So.2d 1381, 1385 (Ala.Cr.App. 1982)." Whisenant v. State, 466 So.2d at 1001. The trial judge has a duty to resolve questions of fact regarding the voluntariness of a confession when presented with conflicting evidence on that issue. See Ex parte Johnson, supra; Sales v. State, 432 So.2d 560 (Ala.Cr.App. 1983). A finding of voluntariness need be supported only by a preponderance of the evidence. Jackson v. State, supra.
"It is well settled that in order for intoxication to render a confession inadmissible, it must be shown that the mind of the defendant was substantially impaired when the confession was made." Moore v. State, 488 So.2d 27, 30 (Ala.Cr.App. 1986). Accord, Hubbard v. State, 500 So.2d 1204, 1218 (Ala.Cr.App.), affirmed, 500 So.2d 1231 (Ala. 1986), cert. denied, Hubbard v.Alabama, 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987). This impairment must be such that "the person confessing [is] unconscious of the meaning of his words." Fields v. State,494 So.2d 477, 485 (Ala.Cr.App. 1986) (quoting Myers v. State,431 So.2d 1342, 1345 (Ala.Cr.App. 1982), cert. quashed,431 So.2d 1346 (Ala. 1983)). "The degree of intoxication which would affect the voluntariness of a statement is a question of fact initially addressed to the trial court and, depending upon its ruling, then to the jury for its consideration." Tice v.State, 386 So.2d 1180, 1185 (Ala. Cr. App), cert. denied,386 So.2d 1187 (Ala. 1980) (citations omitted). " '[W]hat might amount to being under the influence for other purposes is not necessarily sufficient to compel the conclusion that the individual was without capacity to consent.' " State v. Wilson,529 So.2d 1061, 1064 (Ala.Cr.App. 1988). Thus, unless intoxication, in and of itself, so impairs a defendant's mind that he is "unconscious of the meaning of his words," the fact that the defendant was intoxicated at the time he confessed is simply one factor to be considered when reviewing the totality of the circumstances surrounding the confession. *Page 825 
The evidence in this case reveals that Carr was seventeen years, four and one-half months of age and had completed the tenth grade when this statement was given. He stated that he could read and write. Thee and Ramsey both testified that Carr did not appear to have any difficulty understanding what they were saying to him and that Carr stated that he understood his rights. Apart from his intoxication, there was absolutely no evidence that Carr was of less than normal intelligence or that he was unable to comprehend his rights. Compare Garrett v.State, 369 So.2d 833 (Ala. 1979); Hines v. State, 384 So.2d 1171
(Ala.Cr.App.), cert. denied, 384 So.2d 1184 (Ala. 1980). By his own testimony, he was permitted to communicate with his mother (or someone) prior to questioning. Moreover, the interrogation was not excessively prolonged and does not appear to have been in any manner oppressive or coercive. At no point in his testimony did Carr claim he was mistreated in any way by the officers or that he was denied access to food, water, or restroom facilities.
By all accounts, Carr was intoxicated at the time he was arrested. However, there was a break of approximately three hours before he was questioned about the robbery. During this time he received no alcoholic beverages and his body metabolized some amount of the alcohol he had earlier consumed. See generally, Badawy, The Metabolism of Alcohol, 7 Clinics in Endocrinology Metabolism 247 (1978); Bode, The Metabolism ofAlcohol: Physiological and Pathophysiological Aspects, 12 J. Royal C. Physicians 122 (1978). We note that his signature on the 9:18 p.m. waiver is sprawling, disjointed, and more akin to printing than cursive. The signature on the 12:20 a.m. waiver is neat and clearly in cursive. Although Carr may have been intoxicated to some degree at the time he was questioned about the robbery, the evidence does not support a finding that he was intoxicated to the point that his mind was so impaired that he was unconscious of the meaning of his words. We observe that this was not Carr's first experience with alcohol and that, while he stated that he could not recall confessing to the robbery, he had no apparent difficulty recalling his actions during the robbery which occurred a number of hours prior to his confessing. Cf. McDougald v. State, 295 Ark. 276,748 S.W.2d 340 (1988) (statement was voluntary where defendant who was intoxicated at the time of questioning was able to recall a number of other details surrounding the time of the interrogation, such as his arrest, where he was taken, and how long he was detained).
Carr's age, educational level, and intoxication are merely factors to consider in reviewing the totality of the circumstances surrounding his confession. Cf. Chambers v.State, 497 So.2d 607 (Ala.Cr.App. 1986) (youthfulness and mental deficiency are factors to consider in reviewing the totality of the circumstances surrounding a confession); Jackson v. State, supra (infancy, intelligence, and literacy are factors to consider); Rhine v. State, 360 So.2d 1056, 1058 (Ala.Cr.App.), cert. denied, 360 So.2d 1060 (Ala. 1978) ("Both the age and education of the accused are merely factors to be considered along with all the surrounding circumstances in making a determination of voluntariness."). Our review of all the circumstances surrounding Carr's confession leads us to conclude that the trial court's finding that Carr voluntarily and intelligently waived his rights and voluntarily confessed is supported by a preponderance of the evidence.
 II
Carr contends that his rights "were violated for non-compliance with Alabama Rules of Juvenile Procedure." Although his argument is not entirely clear, Carr is apparently asserting that the Auburn police officers were required by Rule 11, A.R.Juv.P., to notify his parents of his arrest and that they failed to do so, thereby violating his rights.
Rule 11 provides in pertinent part:
 "(A) When the child is taken into custody, he must be informed of the following rights by the person taking him into custody:
"(1) that he has the right to counsel; *Page 826 
 "(2) that if he is unable to pay a lawyer and if his parents or guardian have not provided a lawyer, one can be provided at no charge;
 "(3) that he is not required to say anything and that anything he says may be used against him; and
 "(4) if his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so.
 "(B) When a child is brought to the intake office of probation services or delivered to a place of detention or shelter care, the intake office or person in charge of the facility shall immediately inform the child of:
"(1) the reason for his detention;
 "(2) his right to a detention hearing as provided under these rules; and
 "(3) his rights during detention as set forth in part (D) of this rule.
 "(C) When the child is detained, the person in charge of the intake office shall notify the child of his rights as set out in part (A) of this rule. In addition, the person in charge of the intake office shall immediately attempt to notify the parents or guardian of the child of the detention. He shall also inform them of the child's rights and of their right to be represented by counsel throughout the proceedings. The parents or guardian shall also be informed of the child's right to remain silent.
 "(D) The intake office or person in charge of the detention facility shall, in the most expeditious manner possible, insure that the parents or guardian of the child are notified of the child's whereabouts and the reason for his detention, as well as the child's and the parents' rights, provided by part (B) of this rule. Such a communication shall, if practicable, be made in person or by telephone; otherwise the communication shall be by the best means practicable.
 "(E) A written statement containing the above information shall be given to the parents, guardian, or custodian at their first meeting with the officer. If they do not appear at the facility
within 24 hours after the placement of the child in the facility or if they fail to attend the detention or shelter care hearing, this written statement shall be mailed to them if the addresses may reasonably be ascertained."
(Emphasis added.) Other parts of Rule 11 set out the child's rights when a petition has been filed, during the proceedings which follow, and on appeal.
The comment to Rule 11 states: "This rule clarifies the child's rights at the different phases of the case." (Emphasis added.) Taking a child into custody under part (A) is clearly an entirely separate phase from placing the child intodetention, which is covered by parts (B), (C), (D), and (E). This court has implicitly recognized the differences in these two phases. We noted in Talley v. State, 483 So.2d 1369, 1371
(Ala.Cr.App. 1985), cert. quashed, 483 So.2d 1372 (Ala. 1986), that Rule 11 anticipates that a child will be questioned when taken into custody by police and that "Alabama has no prohibition against a law enforcement officer arresting a juvenile for a delinquent act and taking the juvenile to the police station before the juvenile is either released or taken to probation services or an authorized detention facility." (Emphasis added.) See also Chambers v. State, 497 So.2d 607,610 (Ala.Cr.App. 1986).
Under Rule 11, the person taking the child into custody must inform the child of the rights specified in part (A). However, part (A) places no obligation on this person to inform the child's parents that the child has been taken into custody. It is the person in charge of the intake office, once the child has been brought to a place of detention, who must inform the child's parents of his detention. Rule 11(C) and (D).
As noted above in Part I, Carr was taken into custody around 9:00 p.m. by Auburn police officers. He was informed of his Rule 11(A) rights at least by 9:18 p.m.[3] and *Page 827 
was again informed of these rights at 12:20 a.m. Rule 11 imposed no duty on the Auburn police officers to inform Carr's parents of his arrest. Even so, we note that Detective Sergeant Murry attempted to notify Carr's parents that Carr had been arrested.
Moreover, it is clear from the evidence set out in Part I above that Carr's mother was notified of Carr's arrest long before he was transferred to the Lee County Youth Development Center. Carr was permitted to use the telephone at least once and may have made more than one call. There was evidence that he informed Ramsey that he had contacted his relatives. By her own testimony, his mother was aware of his arrest around 12:15 a.m., which was about the time Ramsey and Thee were beginning to question Carr. However, she apparently did not attempt to see Carr until much later that morning.
 III
There was no error in the trial court's denial of Carr's motion to sever his trial from that of his two codefendants.
Carr and his two codefendants were properly joined for trial as all three were alleged to have participated in this robbery.See Rules 15.4(a) and (b), A.R.Crim.P. Temp.; Faircloth v.State, 471 So.2d 485 (Ala.Cr.App. 1984), affirmed, 471 So.2d 493
(Ala. 1985). Once defendants have been joined for trial, Rule 15.4(d), A.R.Crim.P. Temp., provides for severance or "whatever other relief justice requires" where the trial court finds that "a defendant or the state may be prejudiced to the extent that a fair trial cannot be afforded . . ." "It is clear that a severance is not authorized by [this] rule in the absence of a finding of prejudice to a defendant." Ex parte Speaks,494 So.2d 118, 119 (Ala. 1986).
Our Rule 15.4(d) is very similar to Rule 14, Fed.R.Crim.P. "[T]he grant or denial of a [motion under these rules] lies within the sound discretion of the trial court and is reversible only for abuse of discretion. United States v.Kabbaby, [672 F.2d 857 (11th Cir. 1982)]." United States v.Andrews, 765 F.2d 1491, 1498 (11th Cir. 1985), cert. denied,474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986). See alsoMurray v. State, 494 So.2d 891, 894 (Ala.Cr.App. 1986). "For this court to rule that a trial judge abused his discretion in this matter, an appellant has a heavy burden of establishing that he was unable to obtain a fair trial without a severance and that he suffered compelling prejudice which the trial court could not prevent." Cowart v. State, 488 So.2d 497, 501
(Ala.Cr.App. 1985), overruled on other grounds, McClendon v.State, 513 So.2d 102 (Ala.Cr.App. 1986). Accord, United Statesv. Russell, 703 F.2d 1243 (11th Cir. 1983). "Inherent in every joint trial is, of necessity, some degree of bias. Only in the event such prejudice appears to be compelling does severance become warranted." United States v. Marszalkowski,669 F.2d 655, 660 (11th Cir. 1982), cert. denied, Brock v. United States,459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 167 (1982).
 "The test of whether a severance should be granted on the ground of prejudice to the defendants is whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts. [United States v.] McLaurin, 557 F.2d [1064, 1075 (5th Cir. 1977)]. The trial judge must weigh the prejudice attendant to a joint trial against the interests of judicial economy."
Holsemback v. State, 443 So.2d 1371, 1378 (Ala.Cr.App. 1983).
Carr asserts on appeal that he was prejudiced by the antagonistic defenses of his codefendants and by the confusion of the jury resulting from the consolidated trial. However, he has failed to demonstrate to *Page 828 
this court any compelling prejudice requiring a severance.
It was undisputed at trial that Carr alone actually committed the robbery. As noted in Part I above, Carr himself admitted this to the jury. While there was some indication in Carr's testimony that codefendant Greg Works suggested that Carr rob the store, Carr was by no means unequivocal on this point. Of his codefendants, only Works presented an affirmative defense. In essence, Works' testimony was that he did not know what Carr was doing in the Raceway and that he simply drove the car away when Carr got in and told him to do so.
Inconsistent defenses by codefendants may require a severance where the "defenses are prejudicial because they are mutually exclusive or irreconcilable or might mislead or confuse the jury. The defendant may demonstrate the level of antagonism requiring severance by showing that the jury had to disbelieve testimony offered in behalf of a codefendant in order to believe the core of evidence offered by the defendant."Holsemback, 443 So.2d at 1378. In the instant case, Carr's defense was intoxication, while Works' defense was non-participation in the crime. These defenses were neither mutually exclusive nor irreconcilable. Moreover, the core of evidence offered by Carr was corroborated by Works' testimony.
In determining whether the jury was confused so as to result in prejudice requiring severance, "courts focus on whether the jury could reasonably be expected to 'compartmentalize' the evidence and charges against each defendant. Courts also consider the effectiveness of the jury instructions, the complexity of the case and the total weight of evidence against each defendant." Id. This case was not complicated and there was overwhelming evidence of Carr's guilt. The trial court adequately instructed the jury on the separateness of the three cases and the evidence required to convict any one of the defendants.
The jury verdicts in this case are the clearest indication that the jury was not in the least confused. "In determining on appeal whether the jury was in fact confused, the court will look to the verdict. Convictions will invariably be sustained if it may be inferred from the verdict that the jury 'meticulously sifted the evidence,' as where it acquits on certain counts." United States v. Kabbaby, 672 F.2d 857, 861
(11th Cir. 1982) (citations omitted). Although Kabbaby concerned a codefendant who was acquitted of five of the six counts charged, we find this principle equally applicable in the present case. Here, all three defendants were charged with first degree robbery; two were acquitted and the third was found guilty of the lesser included offense of third degree robbery. Under the circumstances of this case, it is clear that the jury "meticulously sifted the evidence," and that Carr suffered no compelling prejudice by virtue of the consolidated trial.
For the reasons set forth above, the judgment of the Lee County Circuit Court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
[1] The certification proceedings are not a part of the record before this court and no issues related to that proceeding are raised in this appeal.
[2] At trial, he testified that he "didn't get my mother on the phone but I got my sister-in-law."
[3] It does not appear from the record that Carr was advised of his Rule 11(A) rights at the time he was initially taken into custody (i.e., when the car in which he was riding was stopped by police officers). While Carr appears to be raising this as an issue on this appeal, the issue was not raised at trial and, consequently, was not preserved for review on appeal. Ex parteO'Leary, 417 So.2d 232 (Ala. 1982), cert. denied, 463 U.S. 1206,103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); Vinzant v. State,462 So.2d 1037 (Ala.Cr.App. 1984).