David Traylor was indicted for murder in violation of §13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." The trial judge sentenced the appellant to forty-five years' imprisonment in the state penitentiary. The appellant was also ordered to pay twenty-five dollars for a crime victim assessment fee and court costs.
During the late evening of June 24, 1988 or early morning of June 25, 1988, the victim, Jeffery Edwards, and the appellant got into a fight at the Carver Community Center in Gadsden, Alabama. After the fight the victim left the center with a friend.
The appellant and other members of the Five-Nine gang were seen at the Murtlewood Housing Projects (11th Street projects) after the fight. There was some discussion between the appellant and another gang member about hunting the victim down. The gang members were approached by an elderly, drunk man who offered to sell them a gun for twenty-five dollars. The appellant bought the gun from this man. Then the members of the gang got in their vehicles and headed to John's Texaco Service Station.
Marsha Edwards, the victim's sister, and some of her friends left the Carver Community Center and went to John's Texaco Service Station. She was approached by the appellant and approximately ten to twelve members of the Five-Nine Gang. The appellant confronted Marsha Edwards *Page 1225 
and warned her about interfering in the fight between himself and her brother. At this point Veronica Jemison, who was with Marsha Edwards at the service station, left the area and told the victim that the appellant was harassing his sister.
After hearing this, the victim went to an area near the service station. There is a discrepancy in testimony as to whether the victim was carrying a stick. As the victim approached, Stacy Traylor, a member of the Five-Nine Gang, saw the victim and stated: "There goes that m_____ f_____. If you won't shoot him I will."
The victim turned and ran around a nearby building. He was being chased by the appellant and three other gang members. As the victim turned the corner, the appellant told the victim to stop. The appellant shot the victim in the chest and the leg. The victim died as a result of the gunshot wound to the chest.
After the shooting, the appellant and other gang members left in their cars and went to the Murtlewood housing projects. The appellant and three or four other gang members were standing outside of the housing projects when they noticed a police car. James David Curry and the appellant started running. At one point the appellant threw an object at Curry. The object hit Curry and bounced over a fence. Curry and the appellant ran to separate houses.
The next morning Curry went back to the area where the appellant threw the object at him. He found a gun, which he took to the appellant's mother. When Hattie Traylor refused to accept the gun, Curry took the gun to the Gadsden Police Department.
When the appellant got home, the appellant's mother took him to the police department because the police came by looking for the appellant. Stacy Traylor and Kennie Palmore, who were at Mrs. Traylor's home, were taken into custody earlier that night.
Jeffery Wright, an investigator with the Gadsden Police Department initially questioned the appellant around 3:00 a.m. or 4:00 a.m. on June 25, 1988. Wright testified that the appellant and his mother were both informed of appellant's juvenile rights prior to questioning. During the questioning, the appellant denied having any knowledge about the crime.
The appellant was detained in the Etowah County jail, pursuant to an order by Barbara Pyron, an Etowah County juvenile probation officer. On June 27, 1988, the appellant was brought from the jail to the police department to be questioned. The appellant was read his constitutional "juvenile rights," and stated that he did not want his mother present during the questioning.
The appellant's mother was at the police station and was told that she had a right to be present during the questioning. She was not readvised of her son's juvenile rights, nor her right to retain counsel.
During the interrogation, the appellant confessed to the shooting. He also executed a waiver of his juvenile rights.
The appellant was subsequently certified to stand trial as an adult.
 I
The appellant contends that his confession was improperly admitted into evidence based upon the State's failure to comply with Rule 11(C) of the Alabama Rules of Juvenile Procedure. Specifically the appellant argues that the appellant's mother was not readvised of her son's juvenile rights, immediately prior to the appellant's being questioned on June 27, 1988.
Rule 11 of the Alabama Rules of Juvenile Procedure, in pertinent part, provides:
 "(A) When the child is taken into custody, he must be informed of the following rights by the person taking him into custody:
"(1) That he has the right to counsel;
 "(2) That if he is unable to pay a lawyer and if his parents or guardian have not provided a lawyer, one can be provided at no charge;
 "(3) That he is not required to say anything and that anything he says may be used against him; and *Page 1226 
 "(4) If his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so.
 "(B) When a child is brought to the intake office of probation services or delivered to a place of detention or shelter care, the intake office or person in charge of the facility shall immediately inform the child of:
"(1) The reason for his detention;
 "(2) His right to a detention hearing as provided under these rules; and
 "(3) His rights during detention as set forth in part (D) of this rule.
 "(C) When a child is detained, the person in charge of the intake office shall notify the child of his rights as set out in part (A) of this rule. In addition, the person in charge of the intake office shall immediately attempt to notify the parents or guardian of the child of the detention. He shall also inform them of the child's rights and of their right to be represented by counsel throughout the proceedings. The parents or guardian shall also be informed of the child's right to remain silent.
There is a distinction between the requirements of Section A of this rule and the requirements set out in Section C. According to the comments rule 11 was to clarify the child's rights at different phases of the case. "Taking a child into custody under part (A) is clearly an entirely separate phase from placing the child into detention, which is covered by parts (B), (C), (D) and (E). This court has implicitly recognized the differences in these two phases. We noted inTalley v. State, 483 So.2d 1369, 1371 (Ala.Cr.App. 1985) cert quashed, 483 So.2d 1372 (Ala. 1986), that Rule 11 anticipates that a child will be questioned when taken into custody by police and that 'Alabama has no prohibition against a law enforcement officer arresting a juvenile for a delinquent act and taking the juvenile to the police station before the juvenile is either released or taken to probation services or authorized detention facility.' See also Chambers v. State,497 So.2d 607, 610 (Ala.Cr.App. 1986)." Carr v. State,545 So.2d 820 (Ala.Cr.App. 1989).
The appellant was taken into custody on July 25, 1988 about 3:00 a.m. or 4:00 a.m. At this time the appellant was notified of his juvenile rights under Rule 11(A). The appellant's mother was also informed of her son's juvenile rights. Although there is no requirement under section (A) of this rule that the parents of the child must be informed when the child has been taken into custody, the appellant's mother was so informed. SeeCarr, supra. Section A of this rule was fully complied with.
Section (C) of rule 11 provides for the juvenile and the parents to be informed of certain rights by the intake officer, once the juvenile is detained.
The appellant was detained in the county jail pursuant to an order by Barbara Pyron, a juvenile probation officer in Etowah County. He remained in the county jail until June 27, 1988, when he was brought to the police department to be questioned again. He was again informed of his juvenile rights but his mother was not informed of the rights under section (C) of rule 11.
We find that, under the circumstances, if any error existed in admitting the substance of the appellant's statement, it was harmless. As Officer Wright testified, the contents of the appellant's confession were as follows:
 "A. Rat [appellant] said him and Stacy and another boy had got in a fight at Carver, and then, him and some other boys had walked to the 11th street projects. And he had bought a gun for $25.00 from a drunk. They then got a ride to 8th street where they confronted Jeff's sister and another boy about the fight. Then Stacy hollered, 'There he is.' Rat [appellant] said he had a stick, and he shot over his head the first time. Then, he started running, and he shot two more times at him. One of them hit him and he fell. Rat [appellant] said he then took off running and got a ride home where he threw the gun away." (R. 206-207) *Page 1227 
The contents of this confession were clearly established by other witnesses at trial; therefore, we find the appellant was not prejudiced by the admission of the statement. See Payne v.State, 487 So.2d 256 (Ala.Cr.App. 1986).
 II
The appellant contends that the State introduced evidence of a scientific nature without laying a proper predicate. Lawden Yates was qualified as an expert in firearms and ballistics. He conducted several tests of the bullets taken from the victim's body and the gun listed as State's exhibit one. Yates testified that in his opinion the bullets taken from the victim's body were fired from the gun in State's exhibit one.
The appellant stated in his objection: "Your Honor, I would object to that at this time, no proper predicate had been laid for the giving of an opinion, or the results of a scientific test." The appellant failed to state the specific grounds why a proper predicate was not laid.
 "[W]here a predicate is required for the admission of particular testimony and 'where a predicate has in fact been laid,' an objection that a proper or a sufficient predicate has not been laid is a 'general objection merely, and will not be referred to any specific objection which could have been obviated if pointed out at the time.' Southern Railway Company v. Dickson, 211 Ala. 481, 487, 488, 100 So. 665, 671 (1924)." Suarez v. State, 369 So.2d 858, 862 (Ala.Cr.App.), cert. denied, Ex parte Suarez, 369 So.2d 863 (Ala. 1979)."
Cains v. State, 555 So.2d 290 (Ala.Cr.App. 1989).
For the reasons stated, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs in result only.