625 So.2d 1201 (1993)
D.L.
v.
STATE.
CR-92-510.
Court of Criminal Appeals of Alabama.
August 13, 1993.
Joe W. Morgan, Jr., Birmingham, for appellant.
James H. Evans, Atty. Gen., and Tracy Daniel, Asst. Atty. Gen., for appellee.
BOWEN, Presiding Judge.
Fifteen-year-old D.L., the appellant, was charged by separate petitions with two instances *1202 of first degree burglary, attempted burglary, and arson in the second degree. The Juvenile Court of Jefferson County ordered the appellant transferred to circuit court for criminal prosecution as an adult on all four cases. This direct appeal is from those orders of transfer.

I.
The appellant contends that the evidence does not support the juvenile court's finding that there was probable cause that the appellant had committed the offenses. See Ala.Code 1975, § 12-15-34(f).
The cases against the appellant and his four codefendants were consolidated and were presented at one transfer hearing. The appellant's argument regarding the sufficiency of the evidence is premised on his contention that his statements to the police and those of his codefendants should have been suppressed.
The appellant was originally charged with six offenses. He was ordered transferred on four of those charges: the burglary and arson of the residence of Roy McKinney; the attempted burglary of the residence of Harriet Charleston; and the burglary of the residence of Teresa Dunning. The other two charges were dismissed.
In his statement to Birmingham Police Officer Robert Kinsey, the appellant denied any involvement in the burglary of the DeLoach residence (one of the charges that was dismissed), but admitted his participation in the McKinney and Dunning burglaries and in the attempted burglary of the Charleston residence. He also admitted participating in the theft of firearms from the McKinney residence. In his statement, the appellant claimed that M.L., a codefendant, because upset because he did not get a firearm and that M.L. then started a fire in the McKinney residence. In their statements to Officer Kinsey, codefendants R.W., D.R., M.L., and T.C. implicated the appellant in either all or some of these same burglaries.
From the record it appears that all five juveniles were arrested and that they thereafter gave statements to unidentified officers of the Birmingham Police Department. The juveniles had been in custody for approximately three or four hours before they were interrogated by Officer Kinsey, who was the only police officer to testify at the transfer hearing. While the prosecution established that the statement each juvenile gave to Kinsey was voluntarily made after a knowing and intelligent waiver of the "juvenile Miranda rights," the prosecution did not lay a predicate for the voluntariness of the statement each juvenile had previously made.
Although Kinsey testified, "They might have been interviewed, but that didn't have anything to do with my interview," he also stated that the officers told him what the juveniles had already said (R. 378); "I didn't know exactly what they told the officers, not exactly. I knew the gist of what they had told them or what they had said they told them." R. 379.
With regard to these initial statements, Kinsey testified that the juveniles did not sign rights waivers "with the other officers." R. 357. Only with regard to juvenile M.L. did Kinsey testify that "[t]he officers indicated that they did [read him his rights before Kinsey interrogated M.L.], but ... [Kinsey did not] have any knowledge of it, direct knowledge." R. 367.
Defense counsel objected to the admission of the appellant's confession:
"MR. MORGAN [defense counsel]: ... We would say that the testimony from the stand had been that D.L. had been questioned by the police prior to reading his Miranda rights but while he was incarcerated, and we believe that the testimony from the stand was to that effect.
"THE COURT: No, it's not. Okay. But what you don't have here is this testimony of the arresting officers. But the testimony from the stand, which is hearsay, was that they said they had read them their Miranda rights. And that's not really challenged here anyway. You know, they weren't called. I don't know how to get to that. But the only testimony that I have is, that I know of, was Kinsey saying that the officers said they read them their Miranda rights. And, of course, then we have evidence that he did." R. 417-18.
*1203 As we have noted, Officer Kinsey did not testify that every juvenile had been read his Miranda rights, but only that he had been told that M.L. had been so informed.
"[A] statement made subsequent to an arrest is prima facie involuntary and inadmissible at trial; thus, the State must prove the statement was voluntarily made and must lay a Miranda predicate before the statement is admissible.... Whether a waiver is voluntarily, knowingly, and intelligently made depends upon the particular underlying facts and circumstances of each case, including the background, experience, and conduct of the accusedthe totality of the circumstances."
Ex parte Williams, [Ms. 1911047, April 2, 1993], 1993 WL 93983, *3 (Ala. 1993). See also Ex parte Johnson, 620 So.2d 709 (Ala. 1993). "The State bears the burden of proving that a confession is admissible as a product of a lawful arrest." Ex parte W.T.K., 586 So.2d 850, 852 (Ala.1991). "Because all extrajudicial confessions are prima facie involuntary, the State has the burden of proving voluntariness." Ex parte Weeks, 531 So.2d 643, 645 (Ala.), cert. denied, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988).
In this case, the prosecution failed to present any evidence concerning the voluntariness of the statements the juveniles originally gave the police. Therefore, we must assume that those initial statements were involuntary. See Ex parte Callahan, 471 So.2d 463, 471 (Ala.1985).
The statements of the appellant and his four juvenile accomplices to Officer Kinsey should not have been admitted into evidence against the appellant at the transfer hearing because the prosecution failed to demonstrate that the statements originally obtained from those juveniles were voluntary or that there was no causal connection between the statements later obtained by Kinsey and the initial statements. See Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

II.
Although we are reversing the juvenile court's judgment because the juveniles' statements should not have been admitted, we reject the other arguments raised by the appellant for the inadmissibility of his statement to Officer Kinsey.
We find that, other than as discussed in Part I of this opinion, the appellant's statement to Officer Kinsey was properly admitted into evidence. The record shows that the appellant was properly advised of his "juvenile Miranda rights" pursuant to Rule 11, A.R.Juv.P. See E.C. v. State, 623 So.2d 364 (Ala.Cr.App.1992). Although there was testimony that the appellant mispronounced some of the words when reading the waiver form, there was also evidence that the officer advising him of his rights corrected the appellant's pronunciation and that the appellant intelligently, knowingly, and voluntarily waived his rights. "Where the evidence of voluntariness is conflicting, and even where there is credible testimony to the contrary, the trial judge's finding of voluntariness must be upheld unless palpably contrary to the weight of the evidence." Whisenant v. State, 466 So.2d 995, 1001 (Ala.Cr. App.1984), reversed on other grounds, 466 So.2d 1006 (Ala.1985); A.W.M. v. State, [Ms. CR-92-88, May 28, 1993], 1993 WL 179888 (Ala.Cr.App.1993).
Contrary to the appellant's argument, the statements were not inadmissible because the police took the juveniles to the police station immediately after their arrest, rather than directly to the juvenile detention facility. "Alabama has no prohibition against a law enforcement officer arresting a juvenile for a delinquent act and taking the juvenile to the police station before the juvenile is either released or taken to probation services or authorized detention facility." Talley v. State, 483 So.2d 1369, 1371 (Ala.Cr.App. 1985), cert. quashed, 483 So.2d 1372 (Ala. 1986), quoted in Traylor v. State, 565 So.2d 1224, 1226 (Ala.Cr.App.1990).
The appellant argues that Officer Kinsey's transfer hearing testimony is suspect because Kinsey lost his notes and did not have a tape-recorded or written record of the appellant's statement, because the officer "lost" the written waiver form, and because the officer gave qualified answers (such as "I don't recall," "I don't remember," "I don't *1204 know," or "I believe") to numerous questions. "[T]his Court must view the evidence in the light most favorable to the State, and `draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact.'" Woodberry v. State, 497 So.2d 587, 590 (Ala. Cr.App.1986). Here, no juvenile presented any testimony to contradict Kinsey's testimony. "`Any doubt, vagueness, or inconsistency in the testimony of a witness [or witnesses] properly goes to the credibility of the witness and is thus a question for the [trier or fact].' Gurganus v. State, 520 So.2d 170, 173 (Ala.Cr.App.1987). `The findings of a trial court on a motion to suppress are binding on this Court unless they are clearly erroneous.' Simmons v. State, 428 So.2d 218, 219 (Ala.Cr.App.1983)." Andujar v. State, 572 So.2d 1319, 1321 (Ala.Cr.App.1990) (bracketed material added by Andujar court). "[T]he finding of voluntariness must be upheld unless palpably contrary to the weight of the evidence." Ash v. State, 424 So.2d 1381, 1385 (Ala.Cr.App.1982).

III.
The evidence does not support the finding of the juvenile court that there was probable cause that the appellant committed the offense of arson in the second degree.
The transfer of a juvenile to circuit court for prosecution as an adult must be supported by clear and convincing evidence. O.M. v. State, 595 So.2d 514, 526 (Ala.Cr. App.1991), cert. quashed, 595 So.2d 528 (Ala. 1992). "An extrajudicial admission or confession made by the child out of court is insufficient to support a finding that the child committed the acts alleged in the petition unless it is corroborated by other evidence." Ala. Code 1975, § 12-15-66(b). See D.D.P. v. State, 595 So.2d 528, 535 (Ala.Cr.App.1991). However, the uncorroborated testimony of an accomplice does provide a sufficient basis for a finding of probable cause. Gulledge v. State, 419 So.2d 219, 220 (Ala.1982).
Assuming that the statements of all the juveniles to Officer Kinsey were admissible, the uncontradicted evidence shows that the appellant participated in the burglary of the McKinney residence and in the theft of firearms from that residence. It is also undisputed that M.L. became angry when he did not get one of the firearms and that he started a fire in the McKinney residence.
"A person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fire or causing an explosion." Ala.Code 1975, § 13A-7-42(a). In this case, there was no showing that the appellant, "with the intent to promote or assist the commission" of the arson, "procure[d], induce[d], or cause[d]" M.L. to commit the arson. Ala.Code 1975, § 13A-2-23(1). While "a conspirator can be held accountable for the reasonably foreseeable substantive offenses committed by his coconspirators whether or not he personally participated," United States v. Eyster, 948 F.2d 1196, 1206 n. 13 (11th Cir.1991), it does not appear from the testimony presented that arson was a reasonably foreseeable circumstance of the burglary and theft. Although these juveniles had burglarized a number of residence during their "crime spree," there is no evidence that arson was a part of their scheme or their method of operation.
"Every person engaging in a joint enterprise is not automatically and equally guilty of a crime committed independently by another participant in the venture.... A different crime independently committed and not a foreseeable consequence of the conspiracy can hardly be charged to one who neither participated in its commission, nor aided therein, although all originally started out on some other illegal venture."
Howell v. State, 339 So.2d 138, 139 (Ala.Cr. App.1976). See also Hollingsworth v. State, 366 So.2d 326, 332 (Ala.Cr.App.1978), cert. denied, 366 So.2d 333 (Ala.1979). Here there was no evidence that the arson was the proximate, natural, and logical result of the criminal adventure of burglary and theft upon which the appellant, M.L., and the other juveniles were engaged. See Jacks v. State, 364 So.2d 397, 402-03 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala.1978).
For these reasons, the judgment of the juvenile court ordering the transfer of the appellant to circuit court for criminal prosecution as an adult is reversed. This cause is *1205 remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TAYLOR, PATTERSON and McMILLAN, JJ., concur.
MONTIEL, J., dissents without opinion.