TAYLOR, Presiding Judge.
The appellant, C.S.H., appeals from orders of the juvenile court transferring him to circuit court for prosecution as an adult for the crimes of murder and robbery.
I
The appellant contends that the court erred in receiving into evidence a post-arrest statement that he made to police officers Matthew Thompson and David Baker. Specifically, he contends that during the taking of his statement he made an ambiguous or equivocal request for counsel that should have been, but was not, clarified by the interrogating officers before they continued with the interrogation.
Once a defendant makes an ambiguous or equivocal request for an attorney, *1232 questioning must stop and the questioning officer must determine whether the request was indeed a request for counsel. Robinson v. State, 574 So.2d 910 (Ala.Cr.App.1990).
The transcript reveals that the following conversation occurred before the interrogation:
“THOMPSON: _ Earlier in our discussion uh, Officer Berra read you your Alabama juvenile warning. Is that correct?
“[APPELLANT]: Yes.
“THOMPSON: And you signed this form that I have in front of me saying that you understand your rights. Is that correct?
“[APPELLANT]: (pause).
“BAKER: Say yes or no.
“[APPELLANT]: Yes.
“THOMPSON: OK. And at that time you agreed to waive your rights. Is that also correct?
“[APPELLANT]: Yes.
“BAKER: That means talk to us without a lawyer or your parents present.
“[APPELLANT]: Yes.
“THOMPSON: That’s correct? OK. Just for the record I’m gonna read over this one more time so that you understand it, and we understand that you understand, OK?
“[APPELLANT]: Yes.
“THOMPSON: OK. It says,‘Alabama Juvenile Warning.’ It says before we ask you any questions you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You are not required to say anything and anything you say can be used against you. You have the right to counsel. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you can not afford a lawyer one will be appointed for you before any questioning if you wish. If you are not ... if you are unable to pay a lawyer and if your parent or guardian has not provided a lawyer, one can be provided at no charge. If your counsel, parent, or guardian is not present, you have the right to communicate with them, and if necessary a reasonable means will be provided for you to do so. If you decide to answer questions now without a lawyer present you will still have the right to stop answering questions at any time until you talk with a lawyer. A lawyer will also be provided for you now if you wish. The second part of this ... do you understand all that?
“[APPELLANT]: The part where I get a lawyer?
“THOMPSON: The part where you get a lawyer.
“BAKER: If you can’t afford one one will be provided, OK? The court will provide you a lawyer.
“THOMPSON: That’s gonna be automatic when we take you out to the youth center.
“[APPELLANT]: Alright.
“THOMPSON: OK. You, you have had the right to talk to your mother. She has been here in this room and you have talked to her, is that correct?
“[APPELLANT]: Yes.
“THOMPSON: OK. And the second part of this is the waiver of rights. T have been advised of my rights and I understand what my rights are. And I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.’ Is that correct?
“[APPELLANT]: Yes.
“THOMPSON: OK. You signed this form this morning?
“[APPELLANT]: Yes.
“THOMPSON: Nobody twisted your arm or made you promises or anything like that, is that correct?
“[APPELLANT]: Yes.”
The appellant argues that his question, “The part where I get a lawyer?” was an ambiguous or equivocal request for counsel, and that the officers did not clarify his request.
“When the State offers in evidence a juvenile’s statement, it must show that the *1233 juvenile made the statement after being advised of his rights under Rule 11(A), A.R.Juv.P. Ex parte Whisenant, 466 So.2d 1006 (Ala.1985); Carr v. State, 545 So.2d 820 (Ala.Cr.App.1989). Rule 11(A) requires that a juvenile be given the standard Miranda warnings and also requires that he be told that he has the ‘right to communicate with [his counsel, parent, or guardian if they are not present] and that, if necessary, reasonable means will be provided for him to do so.’
“ ‘Miranda [v. State of Arizona ] holds that “[t]he defendant may waive effectu-ation” of the rights conveyed in the warnings “provided the waiver is made voluntarily, knowingly and intelligently.’” 384 U.S. [436], at 444, 475, 86 S.Ct. [1602], at 1612, 1628 [16 L.Ed.2d 694 (1966)]. The inquiry has two distinct dimensions. Edwards v. Arizona, [451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981) ]; Brewer v. Williams, 430 U.S. 387, 404 [97 S.Ct. 1232, 1242, 51 L.Ed.2d 424] (1977). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the “totality of the circumstances surrounding the interrogation” reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.’
“Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140—41, 89 L.Ed.2d 410 (1986).
“‘The United States Supreme Court has specifically held that the “totality of the circumstances” test is applicable when determining the admissibility of a juvenile’s confession:
“ ‘ “This totality-of-the-cireumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. ... The totality approach permits — indeed it mandates — inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile’s age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.” ’
“Carr, 545 So.2d at 822, quoting Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979).”
Ex parte Smith, 611 So.2d 1023, 1024-25 (Ala.1992).
Applying the “totality-of-the-circumstances” test to the evidence in this case, the court did not err in receiving the appellant’s statement into evidence. The interrogating officers correctly informed the appellant of his right to have an attorney present when he was being questioned. Even after the appellant asked the question “The part where I get a lawyer?” he answered that he understood that he had the right to an attorney during questioning, but made no request for an attorney.
II
The appellant also contends that the state’s motion to transfer him to circuit court for trial as an adult did not comply with § 12-15-34(a), Code of Alabama 1975. The appellant, however, did not present this issue to the juvenile court. Issues that are not first presented to the trial court cannot be reviewed on appeal. M.W. v. State, 571 So.2d 361 (Ala.Cr.App.1990).
III
The appellant contends that the juvenile court abused its discretion in finding that there were “no reasonable grounds to believe that he [was] committable to an institution or agency for the mentally retarded or the mentally ill.” § 12-15-34(b), Code of Alabama 1975.
Larry Faison, a psychologist employed at the Strickland Youth Center, testified that he had performed a mental evaluation of the appellant. He testified that he had administered a series of psychometric tests and had conducted interviews intended to measure the appellant’s intelligence and achievement. *1234 The results of the tests indicated that the appellant’s intelligence ranked in the mild range of mental retardation; however, Fai-son concluded that the test results underestimated the appellant’s actual abilities because of the appellant’s lack of effort on the tests. Faison testified that, in his opinion, the appellant did not meet any criteria for admission into a facility for the mentally ill or mentally retarded.
Based on the evidence presented at the transfer hearing, the court did not err in finding that the appellant was not committa-ble to an institution for the mentally ill or mentally retarded.
IV
Last, the appellant contends that the complaints upon which the juvenile petitions were based were insufficient.
“Cases before the [juvenile] court shall be initiated by the filing of a petition by the intake officer who shall receive verified complaints and proceed thereon pursuant to rules of procedure adopted by the supreme court.”
§ 12-15-50, Code of Alabama 1975. See also Rule 12, Ala.R. Juv.P. The form of a juvenile complaint, however, is not governed by the Code of Alabama or by the Alabama Rules of Juvenile Procedure. Shedd v. State, 505 So.2d 1306 (Ala.Cr.App.1987).
The juvenile court does not acquire jurisdiction over a case until a petition is filed by an intake officer. Shedd. Therefore, the sufficiency of a complaint that is the basis for a petition is not reviewable by the court.
For the foregoing reasons, the juvenile court did not err in transferring the appellant to the Circuit Court for Mobile County to be tried as an adult. The appellant’s transfer is due to be affirmed.
AFFIRMED.
All the Judges concur.