James McFarley was indicted for the offense of promoting prison contraband in the first degree, in violation of §13A-10-36, Code of Alabama 1975. The jury found McFarley guilty as charged in the indictment, and he was sentenced to a five-year term of imprisonment, which term would run consecutively with the sentence he was then serving. Two issues are raised on appeal.
 I
McFarley contends that the State exercised three of its seven peremptory juror strikes in a racially discriminatory manner to remove blacks from the jury in violation of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).
A defendant claiming a Batson violation initially bears the burden of making a prima facie showing that the prosecution has used its peremptory strikes in a racially discriminatory manner. Batson v. Kentucky, supra,476 U.S. at 96-97, 106 S.Ct. at 1723; Ex parte Branch,526 So.2d 609, 622 (Ala. 1987).
 "To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, [430 U.S. 482] at 494 [97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Avery v. Georgia, 345 U.S. [559], at 562 [73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination."
Batson v. Kentucky, supra, 476 U.S. at 96,106 S.Ct. at 1723.
A trial court's decision with regard to a Batson
motion is to be reversed only if that decision is clearly erroneous. Ex parte Branch, supra, 526 So.2d at 625.
In the case sub judice, the following occurred at trial:
 "MR. TINDLE: Judge, on behalf of the defendant, I make a Batson v. Kentucky motion, saying that the State's strikes are racially discriminatory in an attempt to exclude young black males of the same age group and race as the defendant in the case.
 "I note that two of the three strikes were young black males, whereas one was a young black female. And the State had no unbiased reason for making these strikes.
 "THE COURT: The record should reflect and probably does not, of the 27 prospective jurors there were 11 blacks in the pool. The State exercised seven peremptory challenges, using three of the seven to remove black jurors and four of the seven to remove white jurors. The defendant used all seven strikes to strike members of the white race.
 "The present jury make-up is seven black and six whites. From the nature of the voir dire and the pattern of the State's strikes I will find the defendant has failed to make a prima facie case *Page 432 
that the prosecution's use of peremptory challenges was in a racially discriminatory manner.
 "I will give you an exception to my ruling, Johnny.
"MR. TINDLE: Thank you, Judge.
 "THE COURT: The record should also reflect that Mr. McFarley is a black man."
The removal of all blacks from a jury would not, in and of itself, constitute a prima facie showing of racial discrimination in the selection of the venire. Davis v.State, 555 So.2d 309 (Ala.Cr.App. 1989). McFarley must offer other evidence that would raise an inference of discrimination in addition to merely showing that the State struck some number of blacks from the jury venire.See Harrell v. State, 571 So.2d 1270 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1641, 113 L.Ed.2d 736
(1991).
In Ex parte Branch, supra, the Alabama Supreme Court listed the following illustration as a type of evidence that could be used to raise an inference of discrimination:
 "Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.' [People v.] Wheeler, 22 Cal.3d [258] at 280, 583 P.2d [748] at 764, 148 Cal.Rptr. [890] at 905 [(1978)]. For instance 'it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions,' Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor."
Ex parte Branch, 526 So.2d at 622.
Moreover, in Ex parte Bird, 594 So.2d 676 (Ala. 1991), the Alabama Supreme Court stated:
 "[T]he fact that a larger percentage of black veniremembers eventually is seated on a jury raises less suspicion than if a smaller representation is seated and affords less support for a prima facie case of discrimination. . . . In fact, a large representation might afford the defendant no support at all and could even weaken his prima facie case should he be able to establish one on other grounds."
526 So.2d at 680-81.
In ruling that McFarley had failed to present a prima facie case of racial discrimination in the State's exercise of 3 strikes to remove 3 blacks from the jury, the trial court noted that 11 of the original 27 members of the jury pool were black. The trial court also noted that the final racial make-up of the jury was seven blacks and six whites.[1] The fact that blacks constituted approximately 40% of the original jury pool but constituted approximately 54% of McFarley's final jury severely weakens any prima facie showing which McFarley might claim on other grounds.
McFarley, however, has presented no "other evidence" in support of his claim other than the fact that two of the three blacks struck by the State were young, black males like McFarley and that the black female struck by the State was also young like McFarley. Under the Branch illustration quoted earlier, the fact that the three persons shared more than one characteristic — age and race — would not raise the inference of racial discrimination because the nonracial characteristic — age — could be the deciding factor. Ex parte Branch, supra,526 So.2d at 622.
We therefore hold that based upon the record before us, McFarley has failed to establish a prima facie case of discrimination to support his Batson motion, and the trial court's holding is not clearly erroneous.
 II
McFarley contends that the trial court erred when it allowed one correctional officer *Page 433 
to testify as to what another correctional officer was doing during the search of McFarley and McFarley's cell.
During the State's direct examination of correctional officer Bernard McCord, the following occurred:
 "Q. Did you — was there anyone else with you and Officer Witherspoon?
"A. Officer Mixon.
"Q. Who is that?
"A. A female employee that was there also.
"Q. Is she a correction officer like yourself?
"A. That's correct.
"Q. What did she do, sir?
"A. She basically was a back-up.
"MR. TINDLE: Object to what she did.
"THE COURT: Overruled. You can answer.
 "Q. What did she do during your search, if anything?
 "A. She basically was a back-up, stood in the doorway and observed myself and Officer Witherspoon conducting a cell search.
 "She had a walkie-talkie in case — normal procedure is if anything happens she can call for help.
 "Q. Did she come in the cell and conduct any of the search?
"A. No, she didn't."
McFarley fails to point out before this portion of the witness's testimony, McCord testified at length withoutobjection about what Officer Witherspoon did during the search of McFarley and McFarley's cell. In particular, McCord testified that Officer Witherspoon searched McFarley and found a prison-made knife in McFarley's right front pants pocket. McCord further testified that Officer Witherspoon then searched McFarley's cell, which McFarley shared with another inmate, and found a second prison-made knife in the trash can used by both inmates. According to McCord, McFarley was charged with first degree promotion of prison contraband only as to the knife found on his person.
McFarley now claims that McCord's brief testimony that Officer Mixon merely stood in the cell doorway while the search was being conducted constituted reversible error. We disagree.
Testimony that may be apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred. Thompson v. State,527 So.2d 777, 780 (Ala.Cr.App. 1988). The record reveals that McFarley conducted a thorough and sifting cross-examination of Officer McCord concerning Officer Mixon's involvement in the search of McFarley and his cell. In addition, there was testimony by McFarley's own witnesses concerning the presence of and actions by Officer Mixon during the search of McFarley and his cell.
We therefore hold that under the special circumstances of this case, the admission of Officer McCord's testimony concerning what Officer Mixon did during the search of McFarley and his cell was at most harmless error because 1) the allegedly objectionable testimony in no way prejudiced McFarley and 2) McFarley failed to object to McCord's highly prejudicial testimony concerning what Officer Witherspoon did during the search.
The judgment of the circuit court is affirmed.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of this court.
AFFIRMED.
All the Judges concur except BOWEN, J., concurs in result only.
[1] Nothing in the record explains how striking 3 blacks from a total of 11 blacks could leave 7 blacks on the final jury panel instead of 8. *Page 434