The appellant, Wayne Lee Yeomans, was indicted for murder. Section 13A-6-2, Code of Alabama 1975. On February 10, 1993, a jury found the appellant guilty of murder as charged in the indictment. Yeomans was sentenced to 25 years in the penitentiary, was fined $2,000, and was ordered to pay $2,535 in restitution and $500 to the victims' compensation fund.
The record shows that in the early morning hours of August 1, 1992, the victim, Wesley Dwayne Enfinger, was visiting his mother, Mary Enfinger, at her home in Dothan. His brother, Danny Enfinger, and Danny's fiancee, Mary Evans, were also there. Yeomans lived with Mary Enfinger. Apparently, Wesley Dwayne Enfinger was upset that Yeomans had said he and a family friend were "queers," and had also refused to let Danny move back home. Wesley Dwayne Enfinger was talking with his mother in the living room when Yeomans came out of the bedroom. Wesley Dwayne Enfinger, who was unarmed, stood up to talk with Yeomans. According to the record, Yeomans stood directly in front of Wesley Dwayne Enfinger with his fists clenched. Wesley Dwayne Enfinger pushed Yeomans into a chair and when Yeomans stood up, Wesley Dwayne Enfinger began backing away from Yeomans and moved toward a nightstick hanging on a wall. Wesley Dwayne Enfinger told Yeomans not to pull anything from his pocket. Yeomans pulled a .22 caliber pistol from his pocket and shot Wesley Dwayne Enfinger in the chest. Wesley Dwayne Enfinger then grabbed the nightstick off the wall, but never raised it. As he approached Yeomans, Yeomans grabbed him and flipped him over, taking the nightstick from him and hitting the victim in the head. Danny Enfinger and Yeomans then began wrestling over the stick, stopping after Mary Enfinger ordered them to do so. Wesley Dwayne Enfinger was dead when emergency personnel arrived. Yeomans claimed he shot Wesley Dwayne Enfinger in self-defense. He appeals his conviction for murder.
 I
The appellant first contends that he established a prima facie case of purposeful racial discrimination to support hisBatson challenge to the State's strikes of veniremembers.Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986). Therefore, he argues, the State should have been required to give its reasons for striking those venire members.
To raise a successful Batson challenge, the defendant must first prove a prima facie case of discrimination. If the trial court determines that a prima facie case exists, the prosecution must then come forward with a race-neutral explanation for those peremptory strikes. Harrell v. State,555 So.2d 263, 268 (Ala. 1989).
 "A defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from his jury. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created."
Harrell v. State, 571 So.2d 1270, 1271 (Ala. 1990), cert.denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) (emphasis in the original); Insley v. State, 600 So.2d 448, 449
(Ala.Crim.App. 1992).
Of the initial 36 members of the venire, six were black. One member of the panel was removed for cause and another was struck by the trial court before the parties began striking a jury. Therefore, the jury was struck from a venire of 34 people, six of whom (about 18 percent) were black. The State used two of its 11 peremptory challenges to strike blacks, and the defendant did not strike any blacks. The jury included four blacks (about 33 percent). Because the percentage of blacks on the jury was higher than the percentage of blacks on the venire, no inference of discrimination was created. *Page 1271 
The appellant argues that because the two blacks struck by the State did not respond to questions asked by the trial court and trial counsel during voir dire, they must have been struck because they were black. As the State points out in its brief, while the trial court's voir dire examination of prospective jurors is contained in the record, the voir dire conducted by the parties is not included, except where objections were entered. Therefore, the record does not show what questions were asked of the veniremembers, nor does it show their responses. This Court cannot consider matters not in the record. Hollins v. State, 415 So.2d 1249 (Ala.Crim.App. 1982). Thus, we cannot consider the appellant's assertion in his brief that the two black venire members who were struck did not respond to counsels' questions.
Based on the record, we hold that the trial court did not err in finding that the appellant did not establish a prima facie case of discrimination, and, therefore, in not requiring the prosecution to give its reasons for its strikes.
 II
The appellant also maintains that the trial court erred in overruling his objection to testimony concerning his reputation for carrying a knife. During the State's direct examination of witness Danny Enfinger, the following exchange took place:
 "PROSECUTOR: And would you tell the ladies and gentlemen of the jury, have you had conversations — not what was said, but heard conversations with people in the community as to what, if anything, he carried?
 "APPELLANT'S COUNSEL: Object, Your Honor, as to what conversations he heard in the community.
 "PROSECUTOR: Judge, if the Court would indulge, what I am attempting to show is if there is any type of weapon that would have been carried by knowledge. Hearsay can be right on for that.
"THE COURT: That Mr. Yeomans carried?
"PROSECUTOR: Yes, sir.
"THE COURT: I will overrule the other.
 "APPELLANT'S COUNSEL: Object, Your Honor. It's hearsay.
 "PROSECUTOR: They are claiming self-defense. I am trying to show the panel that's the purpose. That's why I offered it to the Court.
 "THE COURT: I will allow if there are any conversations about carrying a weapon, but not, you know, what who said to who and all this kind of thing.
 "PROSECUTOR: Listen to my question. I realize you are not an attorney. Take your time. Prior to August the 1st, 1992, around 1:00 o'clock a.m. when you were over there, did you know, your own personal knowledge, whether or not Yeomans carried any type — the defendant — any thing in his pocket?
"WITNESS: Yeah.
"PROSECUTOR: What did he carry?
"WITNESS: He used to carry knives."
(R. 76-77, emphasis added.)
At trial, the appellant's counsel objected to the above testimony, claiming it was inadmissible hearsay. In his brief, the appellant for the first time asserts that it also was inadmissible character evidence. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987). Because the appellant did not object at trial to the use of character evidence, the issue is not properly before this Court.
As to the appellant's hearsay objection, the hearsay rule applies only to extrajudicial statements offered for the truth of the matter asserted. An extrajudicial statement offered for some other purpose is not hearsay. Hand v. State,472 So.2d 671, 673 (Ala.Crim.App. 1984).
In this case, Danny Enfinger's testimony was an in-court statement that he had personal knowledge that the appellant carried a weapon in his pocket. Because the witness was testifying as to his personal knowledge, his testimony was not hearsay. Therefore, the trial court did not err in allowing the jury to hear the testimony over the hearsay objection. *Page 1272 
The appellant also asserts that testimony from Mary Evans was inadmissible hearsay. During the State's case-in-chief, the following transpired:
 "PROSECUTOR: Had you heard what other people said he carried in his pocket?
 "APPELLANT'S COUNSEL: Object to what other people said, Your Honor. We haven't heard what any other people said.
 "PROSECUTOR: Yes, we have. We have testimony from Danny saying his reputation was for carrying a knife. I didn't say, 'Did he.' I said, "Has she heard, not what was said."
"WITNESS: I have heard that.
"THE COURT: I will overrule the objection.
 "PROSECUTOR: Listen to my question. Had you heard that?
"WITNESS: Yes.
 "APPELLANT'S COUNSEL: Objection and move to strike. It's hearsay.
"PROSECUTOR: It's not hearsay.
"THE COURT: Objection overruled." (R. 176-77.)
Again, at trial the appellant's counsel did not object based on inadmissible character evidence, but instead raised only a hearsay objection. Therefore, the issue of whether character evidence was inadmissible in this case is not properly before this Court. Frith, supra. In addition, because Danny Enfinger had already testified that he had personal knowledge that the appellant carried a knife in his pocket, any error that may have occurred when Mary Evans testified as to Yeomans' reputation for carrying a knife was harmless because the substance of the testimony was already before the jury. Wigginsv. State, 491 So.2d 1046, 1049 (Ala.Crim.App. 1986) (The admission of an otherwise inadmissible statement does not necessarily constitute error. It may be merely cumulative of other evidence. If it is cumulative, even of improper evidence already admitted without objection, and even if otherwise inadmissible, it may be received without error.)
 III
The appellant also argues that the trial court erred in allowing a witness to testify as to a statement made by the victim's mother at the scene of the murder. During direct examination of Mary Evans, the prosecutor asked:
 "And would you tell the jury what that mother said then after one son was lying on the ground and the other one is getting choked? What did she say?"
The appellant objected to the question because, he said, it called for hearsay, and the trial court overruled the objection. The witness then responded:
 "She hollered at me, she told me to go get her gun. And I said, 'Where is it?' And she said, 'It's up under the bed.' I went in there, but I didn't see any gun up under the bed."
(R. 184.) The appellant argues that the statement was inadmissible hearsay and highly prejudicial. However, the appellant failed to point out that earlier in the trial, during cross-examination of Danny Enfinger, the appellant's counsel elicited the following:
 "APPELLANT'S COUNSEL: Now, after the shot had been fired and after you had gotten into a fight with Mr. Yeomans, was Mary Evans looking for a gun?
"WITNESS: Yeah. My mom told her to go get it.
 "APPELLANT'S COUNSEL: Did you hear your mother say that?
"WITNESS: Yes, I did.
"APPELLANT'S COUNSEL: And where was she looking?
 "WITNESS: Told her to go get it out from under the bed. But it wasn't there.
 "APPELLANT'S COUNSEL: And what was she going to do with the gun, if you know?
"WITNESS: I don't know."
(R. 117-18.) Testimony that may be apparently inadmissible may be rendered innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred. McFarley v. State, 608 So.2d 430, 433
(Ala.Crim.App. 1992); Thompson v. State, 527 So.2d 777, 780
(Ala.Crim.App. 1988). Mary Evans's testimony that Mary Enfinger yelled for her to go get her gun from under the bed is merely cumulative *Page 1273 
of evidence that had already been elicited by the appellant's counsel. Even if Mary Evans's testimony were inadmissible hearsay, the statement was cumulative of prior evidence and any error that may have resulted was harmless.
This cause is due to be affirmed.
AFFIRMED.
All the Judges concur.