[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 446 
The appellant, Louis Christopher Mangione, was charged in a two-count indictment with the capital murder of Vicki Deblieux. Count I of the indictment charged the appellant with the capital offense of murder committed during a kidnapping in the first degree, a violation of § 13A-5-40(a)(1), Ala. Code 1975. Count II of the indictment charged the appellant with the capital offense of murder committed during a robbery in the first degree, a violation of § 13A-5-40(a)(2), Ala. Code 1975. The jury found the appellant guilty of capital murder, as charged in Count I of the indictment, and guilty of murder as a lesser-included offense of the capital murder charged in Count II of the indictment. The appellant was sentenced to life imprisonment without the possibility of parole for the capital murder conviction and to life imprisonment for the murder conviction.
The following evidence was presented at trial. Elmer Andrew Smith and 38-year-old Vicki Deblieux lived together briefly in Chattanooga, Tennessee. Smith testified that in February 1994, Vicki Deblieux told him that she wanted to return to Louisiana to live with her mother. Smith testified that on February 22, 1994, he drove Deblieux to the Alabama-Georgia state line, where he left her at an exit ramp on Interstate 59. From there, Deblieux intended to hitchhike to Louisiana. Deblieux never arrived at Louisiana — several days after Smith left Deblieux at the exit ramp, hikers discovered her nude, mutilated body at the foot of Bald Rock Mountain in St. Clair County.
Larry Flippo, an agent with the Alabama Bureau of Investigation, investigated the murder. Based on information he received from acquaintances of the appellant's, he suspected that the appellant was involved in the homicide. On April 6, 1994, Flippo brought the appellant to the police station for questioning. The appellant gave Flippo a handwritten statement, in which he provided the following facts. On February 22, 1994, he and three companions — Trace Duncan, Kenny Loggins, and Dale Grayson — were riding around the Birmingham area in Grayson's automobile, drinking beer. Between 1:00 and 2:00 a.m., they saw Vicki Deblieux on the exit ramp; she was hitchhiking. They stopped and offered Deblieux a ride; she got into the car and told them that she was going to Louisiana. Instead of driving to the interstate, Grayson drove onto a dirt road toward an area known as the "pipelines." When Deblieux became nervous about this diversion, Grayson informed her that they had to get Loggins's truck, which was *Page 447 
parked in this area. Upon arriving at the pipelines, everyone except Deblieux got out of the car. The appellant, his three friends, and Deblieux drank beer and smoked marijuana for a while. Deblieux subsequently got out of the vehicle to go to the bathroom. When she did so, Grayson told the appellant that he was going to "sacrifice the bitch." When Deblieux returned to the car, Grayson hit her with a beer bottle, and then Duncan, Loggins, and Grayson beat Deblieux. Loggins and Grayson stood on Deblieux's throat, choking her. Deblieux died as a result of the beating and choking. The appellant's companions then placed her body in the back of Loggins's truck. The four drove to a Bald Rock Mountain cliff, where Loggins, Grayson, and Duncan unloaded Deblieux's body. According to the appellant's written statement, his companions poked Deblieux's lifeless body with sticks and kicked it. Loggins, Duncan, and Grayson threw Deblieux's body, as well as some of her belongings, off a cliff at Bald Rock Mountain. Grayson then drove the appellant home. The appellant wrote in his statement that, a few days after the incident, his companions told him that they had returned to the site where Deblieux's body had fallen, and mutilated it.
The appellant wrote that Loggins gave him one of Deblieux's fingers as a "souvenir." The appellant said that he placed the finger in a plastic bag, and that he hid the bag in some bushes near a grocery store. The appellant later revised his written statement and claimed that he had thrown the finger into a rock quarry.
Flippo testified that the appellant made several oral statements to him concerning the incident that were not reflected in the appellant's handwritten statement. According to Flippo, the appellant told him that Deblieux did not want to get out of the vehicle when they arrived at the pipelines. The appellant also admitted to Flippo that he threw a bottle at Deblieux after she got out of the vehicle, and that when she ran, he and his companions chased her and knocked her down. Flippo testified that the appellant told him that he and his companions laughed about Deblieux's saying to them, "Okay, I'll party," moments before she died. According to Flippo, the appellant again changed his story about the disposition of Deblieux's finger — he told Flippo that the finger was buried behind his house. Flippo testified that he later found Deblieux's finger in a plastic bag buried in the appellant's backyard.
Bruce Foley, an acquaintance of the appellant's, testified that in March 1994, the appellant showed him a finger in a plastic bag. The appellant told Foley that the finger belonged to a female hitchhiker who had been murdered by some of his friends. The appellant admitted to Foley that he had thrown a beer bottle at the hitchhiker, but he said that he had not participated in the mutilation of the woman's body.
Sonya Gray testified that she had dated Trace Duncan briefly. One evening in March 1994, Gray, her friend Danielle Boso, Loggins, and the appellant visited Duncan at his home. Loggins began talking about a hitchhiker he and the others had killed. The appellant warned Gray that if she and Boso told anyone he "would dig himself out [sic] and pull [their] intestines out with a spoon." Danielle Boso's testimony regarding the conversation at Duncan's house was similar to Gray's.
Dr. Joseph Embry, a licensed medical examiner employed by the Alabama Department of Forensic Sciences, performed the autopsy on Deblieux. Dr. Embry testified that Deblieux likely died as a result of blunt-force trauma to the head. The injuries were consistent with her having either been struck on the head with a beer bottle or kicked in the head. Deblieux also sustained numerous bruises and lacerations on her neck, which, Dr. Embry testified, could have been caused by someone standing on her neck. Dr. Embry further testified that numerous other stab wounds and lacerations were inflicted on the victim — Deblieux was stabbed approximately *Page 448 
180 times — the majority of these stab wounds were postmortem.
The appellant testified at trial that on February 22, 1994, he and his three companions were riding around in Grayson's automobile listening to the radio, drinking beer, and smoking marijuana. Around 1:30 a.m., the appellant asked Grayson to take him home. As the four drove to the appellant's house, they saw a female hitchhiking at the Trussville exit on Interstate 59. Grayson pulled his automobile to the side of the road and began talking with the woman. She identified herself as Vicki Deblieux, and she said that she was hitchhiking to Louisiana. Deblieux accepted Grayson's offer of a ride. The appellant testified that he, Deblieux, and his three companions then traveled together to the pipelines. When Deblieux appeared nervous, Grayson told her to "chill out," because they were simply picking up Loggins's truck, which was located at the pipelines. Upon arriving at the pipelines, the appellant and his male companions got out of the vehicle; Deblieux remained inside. According to the appellant's testimony, about an hour later, Deblieux got out of the vehicle to go to the bathroom. The appellant testified that at that point, Grayson told him that he was going to "sacrifice the bitch." Grayson then walked over to Deblieux, who at that time was leaning against Loggins's truck, talking with Loggins and Duncan. Grayson hit Deblieux in the head with a beer bottle. Loggins then hit her with a bottle and Grayson punched her. Deblieux tried to run, but she was tackled by both Loggins and Grayson. Grayson began kicking her and Loggins stood on her throat. The appellant testified that Grayson threatened to kill him and Duncan if they "freaked out." The appellant testified that he then walked over to Grayson's car and sat down while Grayson and Loggins continued to beat Deblieux. Duncan, Loggins, and Grayson then placed Deblieux's body in the back of Loggins's truck. Grayson got into his car and told the appellant, who claimed that he had remained in the passenger seat of the car during this time, that Deblieux was dead. Grayson then drove to Bald Rock Mountain to dispose of the body. The appellant rode with Grayson and Loggins, and Duncan followed in Loggins's truck.
Upon arriving at the top of the mountain, the appellant's three companions disposed of some of Deblieux's possessions and then they removed Deblieux's body from the truck. The appellant testified that Duncan began kicking Deblieux's body and that he placed a bottle between her legs and kicked the bottle. Loggins and Grayson then threw Deblieux's body off the mountain. The appellant testified that Grayson eventually took him home, but only after the group had visited a park and washed Loggins's truck at a car wash. The appellant testified that he had no further involvement in the incident involving Deblieux and that he was unaware that his three companions had mutilated her body until some time later.
 I.
The appellant contends that his conviction for intentional murder under Count II of the indictment and the resulting sentence of life imprisonment violate the prohibition against double jeopardy. Specifically, he argues that because both counts of capital murder in the indictment involve the same victim and the same actions, he cannot be convicted and punished for both the capital murder of Vicki Deblieux under Count I of the indictment and the intentional murder of Vicki Deblieux under Count II of the indictment.[1] We agree. *Page 449 
Section 13A-1-8, Ala. Code 1975, provides, in relevant part:
 "(b) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
 "(1) One offense is included in the other, as defined in Section 13A-1-9 . . . ."
(Emphasis added.) Section 13A-1-9, Ala. Code 1975, provides that an offense is included in another offense if "[i]t is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged." Intentional murder, as defined in § 13A-6-2(a)(1), Ala. Code 1975, is a statutory element of the capital offense of murder committed during a kidnapping, as that offense is defined in § 13A-5-40(a)(1), Ala. Code 1975; therefore, the state must prove the element of intentional murder to support a conviction for the capital offense of murder committed during a kidnapping. Thus, intentional murder is a lesser-included offense of the capital offense of murder committed during a kidnapping. Here, the intentional murder of Vicki Deblieux was a lesser-included offense of both the capital offense of murder committed during a kidnapping, as charged in Count I of the indictment, and the capital offense of murder committed during the course of a robbery, as charged in Count II of the indictment.
 "We recognize that the trial court may, and indeed should, properly submit to the jury all counts of an indictment and lesser included offenses reasonably supported by the evidence, notwithstanding the fact that some of the lesser included offenses constitute the `same offense' for double jeopardy purposes. Rolling, 673 So.2d at 815 n. 1, citing Ball v United States, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673-74, 84 L.Ed.2d 740 (1985), and King v. State, 574 So.2d 921, 935-36 (Ala.Cr.App. 1990) (Bowen, J., concurring specially). However, where, as here, the jury returns guilty verdicts for both a capital offense alleged in one count of the indictment and the lesser included offense of intentional murder of a capital offense alleged in another count of the indictment, and the same murder was an element of the capital offense and the intentional murder conviction, the trial court should enter a judgment on only one of the offenses."
Borden v. State, 711 So.2d 498, 503 (Ala.Cr.App. 1997), aff'd,711 So.2d 506 (Ala. 1998). While the appellant was properly charged with the two capital offenses, see Borden, 711 So.2d at 503-04, n. 3, and both offenses were properly submitted to the jury, the prohibition against double jeopardy was violated when the appellant was convicted of the capital offense of murder during the course of a kidnapping under Count I of the indictment and also convicted of the lesser-included offense of intentional murder under Count II of the indictment, because the "same murder was an element of the capital offense and the intentional murder conviction." Borden, 711 So.2d at 503. See also Coral v. State, 628 So.2d 954, 958
(Ala.Cr.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1004), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994) (holding that the defendant's conviction of the lesser-included offense of intentional murder under a count alleging the capital offense of murder-robbery and his conviction of the capital offense of murder-burglary violated the principles of double jeopardy where the same murder was an element of both convictions). Accordingly, this cause is remanded for the trial court to vacate the appellant's conviction for intentional murder, as a lesser-included offense of the capital offense of murder during a robbery, as charged in Count II of the indictment. *Page 450 
 II.
The appellant contends that the evidence was insufficient to support his conviction for capital murder under Count I of the indictment — murder committed during a kidnapping in the first degree. Specifically, the appellant asserts that, although he may have participated in the kidnapping of Deblieux, he did not participate in her murder.
The appellant asserted, in his motion for a judgment of acquittal presented at the close of the prosecution's case, that the state failed to present a prima facie case of murder-kidnapping. The appellant then argued that the prosecution had not established that Deblieux had been kidnapped, and, thus, that the evidence did not support a charge of murder during a kidnapping. The appellant did not argue that the state had failed to prove that the appellant participated in the murder. Because this contention was not presented to the trial court, we question whether this issue was preserved for our review. However, because the appellant's motion for a judgment of acquittal was premised on the state's failure to present a prima facie case of the capital offense of murder during a kidnapping, and the appellant's complicity in the murder was an element the state had to establish as part of its case-in-chief, we will review the appellant's contention. In any event, we conclude that the trial court properly denied the appellant's motion for a judgment of acquittal.
To sustain a conviction under § 13A-5-40(a)(1) for the capital offense of murder during a kidnapping, the state must prove beyond a reasonable doubt: (1) a kidnapping in the first degree as defined by § 13A-6-43(a), or an attempt thereof; (2) an intentional murder as defined by § 13A-6-2(a)(1); and (3) that the murder was committed "during" the course of the kidnapping or attempted kidnapping." Section 13A-5-40(c), Ala. Code 1975, states:
 "A defendant who does not personally commit the act of killing which constitutes the murder is not guilty of a capital offense defined in subsection (a) of this section unless that defendant is legally accountable for the murder because of complicity in the murder itself under the provisions of Section 13A-2-23, in addition to being guilty of the other elements of the capital offense as defined in subsection (a) of this section."
Section 13A-2-23, Ala. Code 1975, provides:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
 "(1) He procures, induces or causes such other person to commit the offense; or
 "(2) He aids or abets such other person in committing the offense; or
 "(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make."
"When reviewing a challenge to the sufficiency of the evidence, this court must accept' "as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.'" Brown v. State, 705 So.2d 871, 875-76 (Ala.Cr.App. 1997) (citations omitted).
 "`[A]n appellate court . . . is not permitted to pass upon the weight or sufficiency of the evidence, where it may yield any rational inference of guilt." Toles v. State, 170 Ala. 99, 100, 54 So. 511 (1911). A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). "[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense." Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, *Page 451 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).'"
White v. State, 546 So.2d 1014, 1017 (Ala.Cr.App. 1989), quoting Granger v. State, 473 So.2d 1137, 1139 (Ala.Cr.App. 1985).
When viewing the evidence in light of the principles set forth above, we conclude that there was ample evidence to support the appellant's conviction for the kidnapping and murder of Vicki Deblieux, on a complicity theory. Although the appellant may not have actually inflicted the physical injuries that killed the victim, the evidence amply supports his role as an accomplice in her murder. Several witnesses, including the appellant, testified concerning his presence during the abduction of Deblieux and her subsequent murder. It is undisputed that the appellant did nothing to prevent his companions from brutally murdering Deblieux. Furthermore, there was some evidence that the appellant acted as a principal in the murder of Vicki Deblieux. There was testimony that the appellant actually struck the first blow and that he, along with his companions, chased Deblieux and knocked her down as she was running from them. There was also evidence that he assisted his companions in disposing of Deblieux's body and her clothes. By convicting him of the capital offense of murder committed during a kidnapping, the jury apparently rejected the appellant's contention that he was merely a surprised bystander to the murder. The jury's verdict is supported by the evidence.
 III.
The appellant contends that the trial court erred in denying his motion to suppress his handwritten statement because, he says, he did not knowingly, intelligently, and voluntarily waive his Fifth Amendment right against self-incrimination before giving the statement. Specifically, the appellant argues that his statement was not knowingly and voluntarily given because, he says, he was unaware that he was under arrest when he gave his written statement. He claims that he thought he was simply a witness who was aiding the police in solving the crime. The appellant maintains that had he known he was under arrest and that he could be as culpable as his accomplices, "he would have been more reluctant to make any statement without counsel present." (Appellant's brief at 34.)
The appellant was 16 years old when he gave his statement to the police.
 "`When the State offers in evidence a juvenile's statement, it must show that the juvenile made the statement after being advised of his rights under Rule 11(A), A.R.Juv.P. Ex parte Whisenant, 466 So.2d 1006
(Ala. 1985); Carr v. State, 545 So.2d 820 (Ala.Cr.App. 1989). Rule 11(A) requires that a juvenile be given the standard Miranda warnings and also requires that he be told that he has the "right to communicate with [his counsel, parent, or guardian if they are not present] and that, if necessary, reasonable means will be provided for him to do so.'"
C.S.H. v. State, 662 So.2d 1230, 1232-33 (Ala.Cr.App. 1995). The determination whether a defendant has validly waived his Miranda rights is the result of a two-step inquiry.
 "`First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.'"
Ex parte Smith, 611 So.2d 1023, 1024 (Ala. 1992), quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 90 L.Ed.2d 410 (1986). (Emphasis added.) *Page 452 
At the suppression hearing, A.B.I. Agent Larry Flippo testified that during his investigation into Deblieux's murder, he received information that the appellant might have been involved. On April 4, 1994, Flippo, and Thomas Earl Dixon, an investigator with the St. Clair County Sheriff's Office, went to the appellant's house. As Flippo approached the front door of the house, he saw the appellant driving his vehicle into the driveway. Flippo approached the appellant's vehicle and told him that he was investigating the murder of a female whose body had been discovered at the bottom of Bald Rock Mountain. The appellant responded that he had been waiting for the police to come, and that he wanted to talk with them. Flippo placed the appellant in his police car and transported him to the police station. Dixon read the appellant his juvenile Miranda[2] rights en route to the station. When Flippo asked the appellant if he wanted to telephone his mother, the appellant responded that he wanted his mother at the police station, but that he did not want her to hear what he had to say to the police.
After arriving at the police station, the appellant was again apprised of his juvenile Miranda rights. The appellant signed and dated the juvenile Miranda warning form, indicating that he understood his rights and that he waived them. After waiving his rights, the appellant stated that he wanted to talk and that he did not want an attorney or his mother to be present. Flippo testified that he did not threaten the appellant and that neither he nor anyone in his presence made any promise to the appellant in order to obtain a statement. Flippo further testified that he told the appellant that he had read him his rights because he could be charged in connection with the murder of Vicki Deblieux. Flippo denied that he told the appellant that he was merely a witness and that he would be allowed to go home after he gave his statement to the police.
The appellant testified at the suppression hearing that when he drove home on April 4, 1994, Flippo approached him in his driveway. Flippo told the appellant to turn off the car engine and to step out of his vehicle. Flippo then frisked him and told him that he needed to question him concerning a homicide he was investigating. The appellant testified he did not know that he would be charged with the murder, and that Flippo told him that after he answered questions and provided a written statement, he would be allowed to go home. The appellant further testified that at the time he gave his statement to police, he thought that he was merely a witness and not a suspect.
At the conclusion of the suppression hearing, the trial court denied the appellant's motion to suppress, finding that the appellant's statement was knowingly and voluntarily given. A trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this court, and its ruling will not be disturbed on appeal unless it is palpably contrary to the weight of the evidence. Finch v. State, 518 So.2d 864, 871
(Ala.Cr.App. 1987).
In this case, the appellant was apparently expecting the police. When the police arrived at the appellant's home, they asked him to step out of his vehicle, and then they frisked him. They asked him to accompany them to the police station. The appellant did not drive his vehicle to the station; rather, he was directed to ride in the patrol car. He was apprised of his juvenile Miranda rights en route to the station and again at the station. Perhaps because he was aware of his own culpability, he requested that his mother not be allowed to listen to what he had to say to the police regarding the murder. Under these circumstances, we believe the state demonstrated that the appellant was fully aware of his rights and that he was aware of the consequences of waiving those *Page 453 
rights and of implicating himself in the crime. Applying the "totality of the circumstances" test to the evidence presented at the suppression hearing, we conclude that the trial court's denial of the appellant's motion to suppress is not palpably contrary to the weight of the evidence.
The appellant intimates in the last portion of his argument on this issue that the law enforcement officers violated § 12-15-58, Ala. Code 1975,[3] because they did not transport him to a juvenile detention facility within 24 hours of his arrest. The appellant suggests that this "violation" renders his statement inadmissible. This court rejected a similar argument in Barnes v. State,704 So.2d 487, 490-92 (Ala.Cr.App. 1997), wherein we held that § 12-15-58, Ala. Code 1975, does not prevent investigating officers from questioning a juvenile about a crime; thus an 11-hour delay in transporting the defendant to a juvenile detention facility was not unreasonable, and did not make his confession inadmissible. The trial court did not err in denying the appellant's motion to suppress based on the law enforcement officers' failure to transport him "with all possible speed" to a juvenile detention facility.
 IV.
The appellant contends that the trial court erred in denying his motion for a mistrial, which was based on allegedly improper contact between Vicki Deblieux's mother and a juror. We disagree.
Defense counsel informed the trial court that he had seen Vicki Deblieux's mother show a picture of Vicki Deblieux, as she appeared before her death, to a juror as that juror entered the courtroom for the morning session of the third day of trial. The court conducted a hearing in chambers, in which the court questioned Deblieux's mother about the incident. Ms. Deblieux acknowledged that she had shown a picture of her daughter to a woman she had observed entering the courtroom. Ms. Deblieux told the court she was unaware that this woman was a juror and further stated that this woman said nothing to her.
The trial court then identified the juror, J.C., with whom Deblieux's mother had had contact. Upon questioning by the trial court, J.C. stated that as she got off an elevator near the courtroom, Vicki Deblieux's mother approached her and told her that she wanted to show her something. When Deblieux's mother began to retrieve a photograph from an envelope, J.C. continued into the courtroom and did not look at the photograph. There was no further contact between J.C. and Ms. Deblieux's mother, and J.C. did not discuss this incident with any other jurors. J.C. told the court that the incident would not affect her verdict. The trial court directed that J.C. not tell any of the other jurors about the incident. The appellant then moved for a mistrial, which the trial court denied.
 "An unauthorized contact between the jurors and a witness [or others] does not necessarily require the granting of a mistrial. It is within the discretion of the trial court to determine whether an improper contact between a juror and a witness [or other person] was prejudicial to the accused."
Ex parte Weeks, 456 So.2d 404, 407 (Ala. 1984), cert. denied,471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985). In Johnson v. State, 648 So.2d 629, 636 (Ala.Cr.App. 1994), this court noted, with approval, the Louisiana Supreme Court's *Page 454 
handling of a similar fact situation in the case of State v. Daniel,378 So.2d 1361 (La. 1979). In Daniel the victim's mother approached two jurors during a recess of the trial. She "flashed" a photograph of the victim at the jurors and identified the victim. Defense counsel moved for a new trial based on this contact. At a hearing on the motion, the two jurors testified that they saw the photograph, but that it did not affect their verdict. The Louisiana Supreme Court upheld the trial court's denial of the motion for a new trial, finding that the defendant had failed to demonstrate that he was prejudiced by the improper contact. 378 So.2d at 1363-64.
This Court has held:
 "`The prejudicial effect of communications between jurors and others, especially in a criminal case, determines the reversible character of the error. Whether there has been a communication with the juror and whether it has caused prejudice are fact questions to be determined by the Court in the exercise of sound discretion. . . . [The trial court's] ruling and determination [on this matter] will not be disturbed in the absence of a showing of abuse of discretion.'"
Davis v. State, 457 So.2d 992, 995 (Ala.Cr.App. 1984), quoting Gaffney v State, 342 So.2d 403, 404 (Ala.Cr.App. 1976).
The record reflects that neither the juror in question nor the prosecution initiated the contact with Deblieux's mother. The juror did not engage in any conversation with Deblieux's mother. It is not clear whether the juror even saw the photograph of the victim, and there is no indication that Deblieux's mother and the juror discussed the particulars of the case. Furthermore, despite defense counsel's intimation to the contrary, there is no evidence that Deblieux's mother had any contact with any of the other jurors. In the absence of any proof, we will not speculate as to whether Deblieux's mother could have had improper contact with the other jurors, and, if so, whether the other jurors were prejudiced by any such contact.
 "`The granting of a mistrial is an extreme measure and should be exercised only when manifestly necessary or when the ends of justice would otherwise be defeated.' The granting of a mistrial is addressed to the broad discretion of the trial judge, and his ruling will not be revised on appeal unless it clearly appears that such discretion has been abused."
Grimsley v. State, 678 So.2d 1197, 1206 (Ala.Cr.App. 1996) (citations omitted). The appellant failed to demonstrate that he was prejudiced by the contact between Deblieux's mother and the juror. Accordingly, the trial court did not abuse its discretion in denying the appellant's motion for a mistrial. Hamilton v. State, 680 So.2d 987, 992-93 (Ala.Cr.App. 1996).
 V.
The appellant contends that the trial court erred in permitting the prosecution to introduce Agent Flippo's computer-generated notes into evidence because, he claims, these notes constituted a prior consistent statement.
As previously noted, Agent Flippo testified on direct examination that the appellant provided him with a handwritten statement concerning his and his companions's involvement in Deblieux's murder. Flippo also testified on direct examination as to oral statements the appellant made to him during the interrogation, which were not contained in the appellant's written statement. These oral statements consisted of, in part, the appellant's admission that he had thrown a beer bottle at Deblieux, and that he and his companions had chased her and had knocked her down when she ran.
On cross-examination, defense counsel asked Flippo whether these oral statements allegedly made by the appellant were included in the appellant's written statement. Flippo acknowledged that they were not. Flippo also acknowledged that *Page 455 
the handwritten notes he had made during his interrogation of the appellant did not include these incriminating oral statements. Defense counsel then implied that Flippo's recollection at trial about what the appellant had told him during his interrogation was faulty and that he could not be believed because he had not recorded the oral statements. Flippo responded that he had, in fact, recorded the appellant's oral statements. Upon further questioning, Flippo testified that after he had completed the interrogation, he recorded the appellant's oral statements to him on a laptop computer. Specifically, he testified as follows:
 "Q [Defense counsel]: And you said at that time that Louie told you during the interview that he threw a bottle and that he didn't kick her?
 "A: Yes, sir, he did say he threw a bottle. I don't understand what your question is.
 "Q: . . . Are you saying now today in court that Louie told you — you didn't write it down. It's not recorded in any way. . . .
". . . .
 "Q: . . . . Are you saying that Louie told you that they all stood around and laughed about [the murder]?"
"A: Yes, sir, he did.
"Q: Okay. Is that in your [handwritten] notes?
"A: No, sir.
 "Q: And you didn't think that was important enough to write down?
"A: Yes, sir, I did.
"Q: — in your notes?
"A: Not in these [handwritten] notes, no, sir.
" . . . .
 "Q: Now, at the completion of this interview . . . what did you do?
 "A: . . . I went outside and put some notes [on] my laptop computer.
". . . .
 "Q: After you put your notes on to your laptop, did you give Louie an opportunity to look at your laptop computer and say, yeah, that's what I said?
"A: No, sir, I did not."
(R. 659-67.)
On redirect, the prosecution attempted to introduce into evidence Flippo's computer-generated notes, which contained the appellant's oral statements. The appellant objected, stating that the notes were inadmissible because they constituted a prior consistent statement.[4] The trial court overruled the objection, holding that the appellant had "opened the door" to this evidence. We agree.
The prosecution was entitled, on redirect, to further explore matters elicited during cross-examination by defense counsel. Sistrunk v. State, 630 So.2d 147, 152 (Ala.Cr.App. 1993). As the above testimony illustrates, defense counsel introduced the subject of these computer-generated notes and, thus, opened the door to their admission by the prosecution on re-direct. Walker v. State,631 So.2d 294, 301 (Ala.Cr.App. 1993). *Page 456 
Accordingly, the admission of these notes did not constitute error. Furthermore, Flippo's computer-generated notes were merely a recordation of the appellant's statements to him and thus, did not violate the evidentiary rule prohibiting the admission of prior consistent statements. The trial court did not err in admitting these notes into evidence.
 VI.
The appellant contends that the trial court erred in refusing to charge the jury on the offense of hindering prosecution as a lesser-included offense of the two capital murder charges. Specifically, the appellant contends that because the evidence established that he had hidden one of the victim's fingers, and that he had threatened two persons with harm if they told anyone about the crime, the evidence presented warranted the submission of the offense of hindering prosecution as a lesser-included offense of the charged offenses. We disagree.
The offense of hindering prosecution in the first degree is set out in § 13A-10-43, Ala. Code 1975, as follows:
 "(a) A person commits the crime of hindering prosecution in the first degree if with the intent to hinder the apprehension, prosecution, conviction or punishment of another for conduct constituting a murder or a Class A or B felony, he renders criminal assistance to such person."
"Criminal assistance" is defined in § 13A-10-42, Ala. Code 1975, in part, as follows:
 "(4) Prevent[ing] or obstruct[ing], by means of force, deception or intimidation, anyone except a trespasser from performing an act that might aid in the discovery or apprehension of such person, or
 "(5) Suppress[ing], by an act of concealment, alteration or destruction, any physical evidence that might aid in the discovery or apprehension of such person."
In Goodwin v. State, 644 So.2d 1269, 1273 (Ala.Cr.App. 1993), this Court stated "that as a matter of law, the offense of hindering prosecution is not a lesser included offense of the offense upon which the underlying prosecution could be based." In so stating, this Court noted an earlier case, Washington v. State,562 So.2d 281, 282 (Ala.Cr.App. 1990), in which this Court concluded that "`[t]he charge of hindering prosecution is inapplicable to a person charged as a principal." Based on the reasoning in Goodwin, supra, and Washington, supra, the appellant could not be charged with hindering prosecution because he was a principal in the offense that resulted in the murder charge alleged to have been hindered. Although the appellant's action may arguably have hindered the prosecution of his accomplices, there is no dispute that he also hindered his own prosecution. Section13A-10-43, Ala. Code 1975, is inapplicable where an accused has rendered assistance to himself. Accordingly, the trial court properly refused to charge the jury on the offense of hindering prosecution as a lesser-included offense.
 VII.
The appellant contends that the trial court erred in refusing to give his requested jury charge number 36, which expounds on the definition of complicity.
After the trial court charged the jury, defense counsel objected to the trial court's refusal to give several of his requested charges, and counsel also asked that the court give the following additional charge:
 "Knowledge of the commission of a felony after its commission without aid being rendered to the active felon in the commission is not sufficient to authorize a conviction."
(C. 280, R. 1063.) Defense counsel stated that he "thought that [the above charge] was in our requested charges," but that he noticed after the court's oral charge that it had been inadvertently omitted. Defense *Page 457 
counsel further stated that he "took this particular charge out of the case of Hardeman v. State, . . . 651 So.2d 59 [(Ala.Cr.App. 1994)]." (R. 1064.) The trial court refused to accept any further written charges from defense counsel, but allowed counsel to place the requested complicity charge in the record for purposes of appellate review. The trial court then noted that its oral charge to the jury adequately covered the requested complicity charge.
We agree that the substance of the appellant's requested charge was covered by the trial court's charge on complicity. The trial court charged the jury on complicity as follows:
 "The words `aid' or `abets' include all assistance rendered by acts or words of encouragement or support or presence, either actual or constructive presence, with the intent to render assistance should it become necessary.
 "The mere presence of the defendant who intends to assist with a criminal act should it become necessary is aiding and abetting, if, and only if, the one who commits the act knows of the defendant's presence and intent to assist him.
 "Complicity may arise at the spur of the moment or on the spur of the moment. There need not be a plan contemplated and agreed upon in advance of the offense. However, there must be a specific intent to promote, aid, or assist the principal in the commission of that offense.
 "The defendant's mere presence, without more, of course, would not be sufficient to establish complicity."
(R. 1031.) (Emphasis added.) This Court has held that "[a] reversal will not be predicated upon the refusal of a requested charge where the import and intent of the defendant's requested charge is covered in the charge given by the trial court, even though the actual language of the request was not embraced within the court's charge." Donahoo v. State, 647 So.2d 24, 28
(Ala.Cr.App. 1994). The principle of the appellant's requested charge — that mere knowledge of the crime is not sufficient to show complicity — was substantially and fairly covered in the court's oral charge.
Furthermore, the appellant's requested charge was not predicated upon the facts of this case. The evidence was undisputed that the appellant knew about the crime as it was being committed, rather than discovering it afterwards. In fact, there was testimony that the appellant helped kill Deblieux. Accordingly, the trial court did not err in refusing to give the requested charge.
 VIII.
The appellant contends that the trial court erred in permitting a witness to testify, over his objection, to statements that one of the appellant's accomplices made to the witness. Specifically, the appellant asserts that Sonya Gray's testimony about what Loggins told her regarding Deblieux's murder was inadmissible hearsay.
As noted previously, Gray testified that approximately three or four weeks after Deblieux's body was found, she, Danielle Boso, Kenny Loggins, and the appellant visited Trace Duncan at his home. Gray confronted Loggins with information she had learned from Loggins's girlfriend concerning the death of a female hitchhiker. Loggins then told her and Boso that he, Duncan, Grayson, and the appellant were involved in the murder of the hitchhiker. Gray testified to the specific details that Loggins told her regarding the murder. The appellant apparently did not tell Gray anything about the murder, but he did threaten Gray that if she told anyone about it, he would kill her.
Assuming, for the sake of argument, that the trial court erred in allowing Gray's testimony into evidence, any error was harmless. The prosecution, on rebuttal, elicited essentially the same testimony, without objection, from Danielle Boso. The improper admission of testimony may be *Page 458 
rendered harmless by the admission, without objection, of prior or subsequent testimony to the same effect or from which the same facts can be inferred. Yeomans v. State, 641 So.2d 1269, 1272-73
(Ala.Cr.App. 1993); McFarley v. State, 608 So.2d 430, 433 (Ala.Cr.App. 1992). Thus, the admission of Gray's testimony regarding what Loggins told her about the murder, even if it was error, was not reversible error. Rule 45, Ala.R.App.P.
 IX.
The appellant contends that the trial court committed reversible error in admitting into evidence photographs of the victim's mutilated body. Specifically, the appellant asserts that these photographs were inadmissible because, he says, they were unduly prejudicial and were irrelevant because he was not involved in the postmortem mutilation of the victim's body.[5]
 "Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence. To be admissible, the photographic material must be a true and accurate representation of the subject that it purports to represent. The admission of such evidence lies within the sound discretion of the trial court. Photographs illustrating crime scenes have been admitted into evidence, as have photographs of victims and their wounds. Furthermore, photographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters. Finally, photographic evidence is admissible even if it has a tendency to inflame the minds of the jurors."
Ex parte Siebert, 555 So.2d 780, 783-84 (Ala. 1989) (citations omitted), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297,111 L.Ed.2d 806 (1990).
The appellant concedes, in his brief to this Court, that he was present when Deblieux was killed, and that photographs that would have shed light on the disputed issue of whether he participated in her murder were admissible. He argues, however, that photographs of Deblieux's mutilated body were not relevant to any issue in this case because it was undisputed that he did not participate in the postmortem mutilation of her body. Although the appellant was not present when his accomplices returned to Bald Rock Mountain to further mutilate Deblieux's body, there was evidence that he was present during the initial mutilation of her body. Thus, photographs that illustrated the consequences of the appellant's involvement in the crime, however slight that involvement was, were relevant. The photographs were indeed gruesome; however, there were no other photographs that would have demonstrated the injuries inflicted upon Deblieux and how she died. The photographs were relevant for this purpose.
Further, the record reflects that the trial court carefully considered the numerous photographs that the prosecution attempted to introduce into evidence, and it excluded several photographs that it considered cumulative. Many of the admitted photographs depict the crime scene and Deblieux's body at the location where *Page 459 
it was discovered. The photographs were relevant to show the crime scene, to illustrate the condition of Deblieux's body when it was found, and to corroborate other testimony in the trial. Thus, we conclude that the trial court did not commit reversible error in admitting the photographs.
The appellant argues, alternatively, that even if the photographs were admissible, the trial court erred in allowing into evidence testimony regarding the mutilation of Deblieux's body. Evidence concerning the mutilation of Deblieux's body was introduced primarily through photographs, as noted above, and through the testimony of the medical examiner who performed the autopsy on Deblieux. Clearly, the prosecution was entitled to establish Deblieux's cause of death; testimony about the mutilation was inextricably linked to the discussion of the cause of death. In some cases, the medical examiner was unable to determine which injuries were postmortem or antemortem. Thus, it would not have been possible, in many instances, for the prosecution to delineate which of the many injuries inflicted on Deblieux occurred in the appellant's presence. Furthermore, testimony from other witnesses concerning the appellant's involvement in the crime necessarily included some details of the mutilation, including the fact that the appellant was in possession of one of Deblieux's fingers. There was no error in the admission of this testimony.
Based on the foregoing, the appellant's conviction under Count I of the indictment for the capital offense of murder during a kidnapping and the resulting sentence are affirmed. However, as discussed in Part I of this opinion, the appellant's conviction for intentional murder under Count II of the indictment is reversed, and this cause is remanded to the trial court with directions to vacate its judgment as to that conviction.
AFFIRMED AS TO THE CONVICTION AND THE SENTENCE IMPOSED AS TO COUNT I; REVERSED AS TO THE CONVICTION AND THE SENTENCE IMPOSED AS TO COUNT II; AND REMANDED WITH INSTRUCTIONS.
LONG, P.J., and McMILLAN, COBB, and BASCHAB, JJ., concur.
[1] The state argues that the appellant's argument has not been preserved for appellate review because, it says, the claim was presented in an untimely motion for a new trial. Rule 24.1(b), Ala.R.Crim.P., requires that "a motion for a new trial must be filed no later than thirty (30) days after sentence is pronounced." The record reflects that although the appellant's motion for a new trial was not filed until 31 days after pronouncement of sentence, the motion for a new trial was timely because the 30th day after pronouncement of sentence was a Sunday. See Rule 1.3(a), Ala.R.Crim.P.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[3] At the time of the appellant's arrest, § 12-15-58, Ala. Code 1975, provided in part, as follows:
 "(a) A person taking a child into custody shall, with all possible speed, and in accordance with the provisions of this chapter and the rules of court pursuant thereto:
". . . .
 "(3) Bring the child, if not released, to the intake office of probation services or deliver the child to a place of detention or shelter care designated by the court. . . ."
(Emphasis added.)
[4] Alabama courts have long held that "[t]he proponent of a witness may not bolster the credibility of a witness by showing that he made similar statements on prior occasions." Varner v. State, 497 So.2d 1135, 1137 (Ala.Cr.App. 1986). Professor Charles Gamble explains this concept as follows:
 "As a general rule, the impeachment of a witness by the introduction of evidence that the witness has made a statement which is inconsistent with the witness' testimony does not authorize the proponent of the witness to support credibility by evidence that the witness has made a statement on another occasion of the same tenor as the witness' present testimony. This is true whether or not the witness is a party, whether or not the witness admitted the making of the prior inconsistent statement, whether the witness denied making such statement and testimony that the witness made it come from the mouths of another witness and whether or not the prior consistent statement was made before or after the time of the claimed inconsistent statement."
C. Gamble, McElroy's Alabama Evidence, § 177.01(2) (5th ed. 1996) (footnotes omitted).
[5] The state contends that this issue was not preserved for review because, it argues, the appellant failed to specify the grounds of his objection to the admission of the photographs. We disagree. The record reflects that the appellant assigned numerous grounds of objection and, further, asked the court to consider those grounds previously listed in his pretrial motion in limine. The pretrial motion in limine included the objections that are raised on appeal. The trial court apparently understood the appellant's grounds of objection and overruled the objection. Thus, this issue is preserved for review.